ROBINSON, J.
**772 The principal issue in this appeal is whether our decision in State v. Ray , 290 Conn. 602, 966 A.2d 148 (2009), which would require the defendant in the present case, Alrick A. Evans, to prove drug dependency as an affirmative defense to a charge under General Statutes (Rev. to 2011) § 21a-278 (b),[1] remains **773 good law in light of (1) the subsequent decision of the United States Supreme Court in Alleyne v. United States , 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314, 186 L.Ed. 314 (2013), and (2) the legislature's recent amendment of § 21a-278 (b) in No. 17-17, § 2, of the 2017 Public Acts (P.A. 17-17). The defendant appeals[2] from the judgment of the trial court denying his motion to correct an illegal sentence. On appeal, the defendant claims that (1) we should overrule our interpretation of § 21a-278 (b) in Ray , (2) under Alleyne , the state was required to prove his lack of drug dependency beyond a reasonable doubt because it is a fact that would result in an increased mandatory minimum sentence, and (3) the narcotics statutory scheme, which gives the prosecutor the sole authority to decide whether to proceed under § 21a-278 (b), rather than the otherwise identical General Statutes (Rev. to 2011) § 21a-277 (a),[3] violates the separation of powers established by article second of the *1191 constitution of Connecticut, as amended by article eighteen of the amendments. The state contends to the contrary, and also argues that the trial court lacked **774 subject matter jurisdiction over the defendant's motion to correct because that motion challenged his underlying conviction, rather than his sentence. Although we conclude that the trial court had subject matter jurisdiction over the defendant's motion to correct, we disagree with the merits of the defendant's claims and reaffirm Ray 's holding that drug dependency under § 21a-278 (b) is an affirmative defense that, if proven, reduces a defendant's potential sentence. Accordingly, we affirm the judgment of the trial court.
The record reveals the following undisputed facts and procedural history. On June 16, 2011, the state charged the defendant with one count of the sale of narcotics in violation of § 21a-278 (b), and one count of possession of narcotics in violation of General Statutes (Rev. to 2011) § 21a-279 (a), in connection with the sale of crack cocaine in Bristol. On November 16, 2011, the defendant pleaded guilty, in accordance with the Alford doctrine,[4] to the sale of narcotics in violation of § 21a-278 (b); the state nolled the possession charge. Drug dependency was not discussed during the plea hearing.[5]
**775 The trial court subsequently sentenced the defendant to five years imprisonment with five years special parole.
Pursuant to Practice Book § 43-22,[6] on November 5, 2015, the defendant filed the *1192 motion to correct an illegal sentence that underlies the present appeal.[7] In that motion, the defendant claimed that his sentence is illegal because, inter alia, under Alleyne v. United States , supra, 570 U.S. at 99, 133 S.Ct. 2151, and Apprendi v. New Jersey , 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed. 2d 435 (2000), the sentence "exceeds the relevant statutory limits" and "the fact triggering the mandatory minimum [sentence] was not found by a proper [fact finder] or admitted by the defendant ...." On February 9, 2016, the trial court issued a memorandum of decision observing that, in State v. Ray , supra, 290 Conn. at 623-26, 966 A.2d 148, this court had concluded that Apprendi , which requires that the state charge, and prove to the fact finder beyond a reasonable doubt, any factor, other than a prior conviction, that increases the maximum penalty for a crime; see Apprendi v. New Jersey , supra, at 474-97, 120 S.Ct. 2348 ; did not apply to proof of drug dependency under § 21a-278 (b) because such proof constitutes an affirmative defense under that statute. The trial court then rejected the defendant's argument that Ray is no longer good law under Alleyne , which extended the rule set forth in Apprendi to facts **776 that increase a statutory minimum sentence.[8] See Alleyne v. United States , supra, at 103, 133 S.Ct. 2151. After rejecting the defendant's other challenges to his sentence,[9] the trial court rendered judgment denying the motion to correct an illegal sentence. This appeal followed. See footnote 2 of this opinion.
In the present appeal from the trial court's denial of his motion to correct, the defendant claims the following: (1) we should overrule State v. Ray , supra, 290 Conn. at 602, 966 A.2d 148 ; and (2) the narcotics statutory scheme violates the separation of powers.[10] The state disagrees with the merits of the defendant's claims and also contends that the trial court should have dismissed the defendant's motion to correct for lack of subject matter *1193 jurisdiction. All of these issues present questions of law over which our review is plenary. See, e.g., Connecticut Coalition for Justice in Education Funding, Inc. v. Rell , 327 Conn. 650, 694, 176 A.3d 28 (2018) (constitutional issues); **777 Hull v. Newtown , 327 Conn. 402, 413-14, 174 A.3d 174 (2017) (statutory construction); State v. Delgado , 323 Conn. 801, 810, 151 A.3d 345 (2016) (subject matter jurisdiction). We address each issue in turn.
I
As a threshold matter; see, e.g., State v. Koslik , 116 Conn. App. 693, 699, 977 A.2d 275, cert. denied, 293 Conn. 930, 980 A.2d 916 (2009) ; we begin with the state's challenges to the trial court's subject matter jurisdiction,[11] namely, that (1) the defendant's motion to correct improperly challenged the underlying conviction, rather than the sentence, and (2) this case is moot because the defendant's sentence was the product of a plea bargain.[12]
**778 A
Relying on State v. Lawrence , 281 Conn. 147, 913 A.2d 428 (2007), the state contends that the trial court lacked jurisdiction over the defendant's motion to correct because it did not challenge the sentencing phase of the proceeding but, rather, the underlying conviction. In response, the defendant cites State v. Henderson , 130 Conn. App. 435, 24 A.3d 35 (2011), appeals dismissed, 308 Conn. 702, 66 A.3d 847 (2013), and argues that issues raised under Alleyne and Apprendi are properly addressed in a motion to correct an illegal sentence. We agree with the defendant and conclude that his colorable claim of an illegal sentence under Alleyne and Apprendi gave the trial court subject matter jurisdiction over his motion to correct.
*1194 "It is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed.... This is so because the court loses jurisdiction over the case when the defendant is committed to the custody of the commissioner of correction and begins serving the sentence.... Without a legislative or constitutional grant of continuing jurisdiction, however, the trial court lacks jurisdiction to modify its judgment." (Citations omitted; internal quotation marks omitted.) State v. Lawrence , supra, 281 Conn. at 153-54, 913 A.2d 428.
As in Lawrence , the defendant in the present case "relies on a common-law exception to this rule, embodied in [Practice Book] § 43-22, allowing the trial court to correct an illegal sentence." Id., at 155, 913 A.2d 428. "Because the judiciary cannot confer jurisdiction on itself through its own rule-making power, § 43-22 is limited by the common-law rule that a trial court may not modify a sentence if the sentence was valid and its execution **779 has begun.... Therefore, for the trial court to have jurisdiction to consider the defendant's claim of an illegal sentence, the claim must fall into one of the categories of claims that, under the common law, the court has jurisdiction to review." (Citation omitted.) Id.
"[A]n illegal sentence is essentially one which ... exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory.... In accordance with this summary, Connecticut courts have considered four categories of claims pursuant to [Practice Book] § 43-22. The first category has addressed whether the sentence was within the permissible range for the crimes charged.... The second category has considered violations of the prohibition against double jeopardy.... The third category has involved claims pertaining to the computation of the length of the sentence and the question of consecutive or concurrent prison time.... The fourth category has involved questions as to which sentencing statute was applicable." (Citations omitted; internal quotation marks omitted.) Id., at 156-57, 913 A.2d 428. Considering these categories, which were first articulated by the Appellate Court's definition of the term "illegal sentence" in State v. McNellis , 15 Conn. App. 416, 443-44, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988), this court held in Lawrence that "a challenge to the legality of a sentence focuses not on what transpired during the trial or on the underlying conviction. In order for the court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding, and not the trial leading to the conviction , must be the subject of the attack." (Emphasis added.) State v. Lawrence , supra, 281 Conn. at 158, 913 A.2d 428.
Lawrence is not, however, the last word from this court in defining the trial courts' jurisdiction over motions to correct. In **780 State v. Parker , 295 Conn. 825, 837, 992 A.2d 1103 (2010), we observed that "the rules of practice are consistent with the broader common-law meaning of illegality, permitting correction of both illegal sentences and sentences imposed in an illegal manner." We emphasized that the protection against sentencing in an illegal manner "reflects the fundamental proposition that [t]he defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process." (Internal quotation marks omitted.) Id., at 839, 992 A.2d 1103. We then added "one qualification" to the description in *1195 State v. McNellis , supra, 15 Conn. App. at 443-44, 546 A.2d 292, observing that the "enumerated examples would not encompass rights or procedures subsequently recognized as mandated by federal due process," explicitly including claims under Apprendi v. New Jersey , supra, 530 U.S. at 490, 120 S.Ct. 2348, and similarly would not "encompass procedures mandated by state law that are intended to ensure fundamental fairness in sentencing, which, if not followed, could render a sentence invalid." State v. Parker , supra, at 839-40, 992 A.2d 1103. Accordingly, we emphasized that "the examples cited in McNellis are not exhaustive and the parameters of an invalid sentence will evolve." Id., at 840, 992 A.2d 1103.
To be sure, some constitutional protections governing the sentencing process, such as the United States Supreme Court's decision in Apprendi , have had the effect of blurring the lines between the sentencing proceeding and the trial, particularly insofar as they have constitutionally mandated the submission of certain factual issues to the jury prior to the court's imposition of the sentence. For example, in Apprendi v. New Jersey , supra, 530 U.S. at 490, 120 S.Ct. 2348, the United States Supreme Court concluded that the federal due process clause and sixth amendment to the United States constitution require that, "[o]ther than the fact of a prior conviction, **781 any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Thus, a claim is cognizable in a motion to correct an illegal sentence if it is a challenge specifically directed to the punishment imposed, even if relief for that illegal punishment requires the court to in some way modify the underlying convictions, such as for double jeopardy challenges. See State v. Cator , 256 Conn. 785, 804-805, 781 A.2d 285 (2001) (concluding that "trial court had jurisdiction to alter the sentence pursuant to Practice Book § 43-22, because otherwise the constitutional prohibition against double jeopardy would have been violated," even though correction of illegal sentence required merger of underlying convictions). We emphasize, however, that the motion to correct is not another bite at the apple in place of challenges that are more properly brought on direct appeal or in a petition for a writ of habeas corpus.[13] See *1196 **782 State v. McGee , 175 Conn. App. 566, 574 n.6, 168 A.3d 495 (2017) (The trial court had jurisdiction over a motion to correct an illegal sentence that sought to vacate a robbery conviction as a remedy for a double jeopardy violation because "the defendant has not challenged, in any way, the validity of his convictions for robbery in the second degree or of the guilty verdicts upon which they rest. He has not claimed any infirmity with the state's information; he has not advanced any claims of insufficiency with respect to the state's evidence against him, or of evidentiary error, instructional error, prosecutorial impropriety, or any other type of error upon which the legality of trial proceedings or of the verdicts and judgments they result in are routinely challenged. Rather, he claimed that, at sentencing, the court should have vacated one of his two second degree robbery convictions and sentenced him only on one of those convictions."), cert. denied, 327 Conn. 970, 173 A.3d 953 (2017).
As the "parameters of an illegal sentence [have] evolve[d]"; State v. Parker , supra, 295 Conn. at 840 ; particularly given the landmark decision of the United States Supreme Court in Apprendi v. New Jersey , supra, 530 U.S. at 466, 120 S.Ct. 2348, we find instructive the Appellate Court's decision in State v. Henderson , supra, 130 Conn. App. at 435, 24 A.3d 35. In Henderson , the defendant claimed that his robbery and assault sentence, which had been enhanced pursuant to the persistent serious felony offender statute, General Statutes (Rev. to 1993) § 53a-40 (g), was illegal under Apprendi because, although he had pleaded guilty to a part B information seeking that enhancement, he did not expressly admit "that the public interest would be best served by extended incarceration and lifetime supervision." Id., at 438-39, 24 A.3d 35. The Appellate Court concluded that jurisdiction existed over the motion to **783 correct an illegal sentence, even though it challenged the trial court's failure to submit the issues to the jury-an action that by definition occurs prior to sentencing-because of the defendant's "legal theory as to why his sentence was illegal," namely, a violation of Apprendi . Id., at 441, 24 A.3d 35 ; see also id., at 446, 24 A.3d 35. Following State v. Koslik , supra, 116 Conn. App. at 700, 977 A.2d 275, which held that there was jurisdiction over a defendant's claim that a trial court had failed to make a finding necessary to justify an extended probation period, the court emphasized in Henderson that "the defendant's claims go to the actions of the sentencing court. Specifically, he challenges actions taken by the sentencing court that, although proper at the time, were affected by a subsequent change in the law." State v. Henderson , supra, at 445, 24 A.3d 35 ; see also State v. Abraham , 152 Conn. App. 709, 720-23, 99 A.3d 1258 (2014) (The court, after reviewing case law, noted the state's concession that the court had jurisdiction under Henderson over a motion to correct raising an Apprendi challenge to the "sentencing court's decision to impose a sentence enhancement, under [General Statutes] § 53-202k, without first obtaining the necessary jury finding. We further conclude that this jurisdiction encompasses a claim that the defendant did not properly waive his right to a jury determination of the violation, resulting in a sentence imposed in an illegal manner that exceeds the statutory limit for the underlying crimes of which he was found guilty by the jury."). *1197 The state's jurisdictional challenge requires us to consider whether "the defendant has raised a colorable claim within the scope of Practice Book § 43-22 that would, if the merits of the claim were reached and decided in the defendant's favor, require correction of a sentence.... In the absence of a colorable claim requiring correction, the trial court has no jurisdiction to modify the sentence." (Citation omitted; internal **784 quotation marks omitted.) State v. Delgado , supra, 323 Conn. at 810, 151 A.3d 345. "A colorable claim is one that is superficially well founded but that may ultimately be deemed invalid .... For a claim to be colorable, the defendant need not convince the trial court that he necessarily will prevail; he must demonstrate simply that he might prevail." (Citation omitted; emphasis in original; internal quotation marks omitted.) In re Santiago G. , 325 Conn. 221, 231, 157 A.3d 60 (2017). The jurisdictional and merits inquiries are separate; whether the defendant ultimately succeeds on the merits of his claim does not affect the trial court's jurisdiction to hear it. See id."It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) State v. Fowlkes , 283 Conn. 735, 739, 930 A.2d 644 (2007). We emphasize, however, that this ''general principle that there is a strong presumption in favor of jurisdiction ... in criminal cases ... is considered in light of the common-law rule that, once a defendant's sentence has begun [the] court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act.'' (Citations omitted; emphasis in original; internal quotation marks omitted.) State v. Ramos, 306 Conn. 125, 134-35, 49 A.3d 197 (2012) ; see, e.g., State v. Koslik , supra, 116 Conn. App. at 697, 977 A.2d 275 (applying presumption to motion to correct illegal sentence). Thus, the presumption in favor of jurisdiction does not broaden the nature of the postsentencing claims over which the court may exercise jurisdiction in criminal cases, but merely serves to emphasize that the jurisdictional inquiry is guided by the "plausibility" that the defendant's claim is a challenge to his sentence, rather than its ultimate legal correctness. In re Santiago G. , supra, at 232-33, 157 A.3d 60 ; see also footnote 13 of this opinion.
In determining whether it is plausible that the defendant's motion challenged the sentence, rather than the underlying trial or conviction, we consider the nature of the specific legal claim raised therein. See State v. Henderson , supra, 130 Conn. App. at 441, 24 A.3d 35. As we understand the defendant's claims in the present appeal, he does not ask us to disturb his conviction under § 21a-278 (b), or otherwise claim that he was convicted under the wrong statute. Instead, the defendant seeks resentencing, claiming that § 21a-278 (b) merely enhances the penalty available under § 21a-277 (a) when those statutes are read with the judicial gloss rendered necessary by the United States Supreme Court's decisions in **785 Alleyne v. United States , supra, 570 U.S. at 99, 133 S.Ct. 2151, and Apprendi v. New Jersey , supra, 530 U.S. at 466, 120 S.Ct. 2348.[14] *1198 Given the otherwise identical statutory language of §§ 21a-277 (a) and 21a-278 (b), and the lack of any case **786 law from this court squarely rejecting the defendant's proffered interpretation of § 21a-278 (b) as merely providing a penalty enhancement in view of the Supreme Court's decision in Alleyne , which extended the protections of Apprendi to mandatory minimum sentences; see Alleyne v. United States , supra, 570 U.S. at 103, 133 S.Ct. 2151 ; we conclude that the defendant's interpretation of the narcotics statutory scheme is sufficiently plausible to render it colorable for the purpose of jurisdiction over his motion. See In re Santiago G. , supra, 325 Conn. at 233-34, 157 A.3d 60 (dismissing appeal for lack of final judgment from denial of motion to intervene in termination of parental rights action because there was no colorable claim given unchallenged Appellate Court case law rejecting existence of such right). In particular, the fact that the defendant does not ask us to disturb his conviction under § 21a-278 (b), but merely seeks remand for resentencing, renders this case distinguishable from State v. Lawrence , supra, 281 Conn. at 151, 158-59, 913 A.2d 428, in which we concluded that the trial court lacked jurisdiction over a motion to correct claiming that court had improperly convicted the defendant of manslaughter in the first degree with a firearm, rather than simply manslaughter in the first degree, following his successful assertion of the affirmative defense of extreme emotional disturbance.[15] **787 *1199 Indulging the presumption in favor of jurisdiction, we conclude that the trial court had subject matter jurisdiction over the defendant's motion to correct. In this case, the defendant's claims challenge the validity of State v. Ray , supra, 290 Conn. at 602, 966 A.2d 148, in which we concluded that the defendant bore the burden of proving drug dependency, through the lens of Alleyne , which extended Apprendi to mandatory minimum sentences.[16] Because this claim is colorably directed to the **788 validity of the sentence rather than the underlying conviction, we conclude that the trial court properly exercised jurisdiction over the defendant's motion to correct.
B
The state also contends that the defendant's claims are moot because his sentence arises from his guilty plea to violating § 21a-278 (b), which included the acceptance of the specific period of five years imprisonment in exchange for the benefit of relief on other pending charges. The state contends that this plea amounted to a waiver of his right to a jury determination of the fact of drug dependency, and meant that the trial court did *1200 not engage in judicial fact-finding forbidden by Alleyne , thus rendering no practical relief available in this case. In response, the defendant relies on State v. Reynolds , 126 Conn. App. 291, 11 A.3d 198 (2011), and State v. Kokkinakos , 143 Conn. App. 76, 66 A.3d 936 (2013), overruled in part on other grounds by State v. Henderson , 312 Conn. 585, 94 A.3d 614 (2014), to argue that his claim is not moot because a guilty plea to an offense, without an acknowledgment on the record from the defendant as to the specific facts that would trigger the increased sentence, does not waive **789 the predicate finding for enhancement. We agree with the defendant and conclude that this claim is not moot.
"Mootness implicates a court's subject matter jurisdiction and, therefore, presents a question of law over which we exercise plenary review.... For a case to be justiciable, it is required, among other things, that there be an actual controversy between or among the parties to the dispute .... [T]he requirement of an actual controversy ... is premised upon the notion that courts are called upon to determine existing controversies, and thus may not be used as a vehicle to obtain advisory judicial opinions on points of law.... Moreover, [a]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal.... When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Citations omitted; internal quotation marks omitted.) State v. T.D. , 286 Conn. 353, 361, 944 A.2d 288 (2008).
Again assuming that the defendant's interpretation of § 21a-278 (b) in light of Alleyne is colorable, we conclude that his Alford plea did not render this claim moot. Even if we assume, without deciding, that a guilty plea could affect the court's subject matter jurisdiction over a subsequent motion to correct premised on the failure to make a necessary finding,[17] there was no such **790 plea in the present case. A guilty plea to an underlying offense does not, in the absence of a specific plea to the specific facts necessary to trigger an enhanced sentence, operate to waive the defendant's right to that specific finding. We find instructive State v. Kokkinakos , supra, 143 Conn. App. at 83-85, 66 A.3d 936, in which the Appellate Court held that a defendant's plea to part A of an information alleging theft offenses, and part B of the information alleging persistent felony offender status under General Statutes (Rev. to 2007) § 53a-40 (j), operated to waive a jury finding that enhancement of his sentence was in the public interest, but not a court finding to that effect. The Appellate Court emphasized that the canvass was generally limited to a jury trial on part B of the information, and that the defendant "never expressly admitted that an enhancement of his sentence would serve the public interest." Id., at 85-86, 66 A.3d 936. The court further rejected the state's argument that, "by virtue of the defendant's guilty plea on the part B information, *1201 he admitted to a finding that an enhanced sentence would be in the public interest." Id., at 86, 66 A.3d 936 ; see id., at 87, 66 A.3d 936 ("[T]here are two ways in which the public interest factor can be satisfied in the context of a guilty plea. The court can make an express finding, or the defendant can expressly agree to the determination."); see also State v. Abraham , supra, 152 Conn. App. at 722-23, 99 A.3d 1258 (trial court improperly relied on guilty plea to part B of information in dismissing motion to correct challenging firearms enhancement under General Statutes § 53-202k for lack of requisite jury findings); State v. Reynolds , supra, 126 Conn. App. at 312, 11 A.3d 198 (concluding that remand was required because, "[a]fter the defendant made his guilty plea to the charge of being a persistent serious felony offender, the trial court did not make such a finding, nor did the defendant stipulate or acknowledge that extended incarceration is in the public interest"). Turning to the record in the present case, we conclude that **791 there was no waiver insofar as the defendant did not admit to lack of drug dependency, and the prosecutor's recitation of the facts did not contemplate that topic. See footnote 5 of this opinion. Accordingly, we conclude that the defendant's Alford plea did not render this claim moot.[18]
II
We now turn to the principal issue in the present appeal, namely, the defendant's request that we overrule State v. Ray , supra, 290 Conn. at 602, 966 A.2d 148, in which we held that not requiring the state to plead and prove lack of drug dependency under § 21a-278 (b) does not violate Apprendi v. New Jersey , supra, 530 U.S. at 466, 120 S.Ct. 2348, because drug dependency is an affirmative defense that would mitigate a sentence. The defendant contends that we should overrule Ray because (1) the Supreme Court's subsequent decision in Alleyne v. United States , supra, 570 U.S. at 99, 133 S.Ct. 2151, requires the state to plead and prove beyond a reasonable doubt those facts, such as lack of drug dependency under § 21a-278 (b), which trigger mandatory minimum sentences, and (2) Ray was wrongly decided as a matter of statutory interpretation.
Our consideration of these claims is informed by a detailed review of § 21a-278 (b) and our 2009 decision in Ray. Section 21a-278 (b) provides in relevant part that "[a]ny person who ... sells ... to another person any narcotic substance ... and who is not, at the time of such action, a drug-dependent person, for a first offense shall be imprisoned not less than five years or **792 more than twenty years ...." See also footnote 1 of this opinion. In Ray , the defendant contended, inter alia, that "(1) this court's previous cases construing § 21a-278 (b) and General Statutes § 21a-269[19] to require the defendant to prove by a preponderance of the evidence that he *1202 was drug-dependent were wrongly decided; [and] (2) if our interpretation of the statutes in those cases was correct, the requirement that he prove his dependence on drugs under §§ 21a-278 (b) and 21a-269 violates his due process right to have every element of the offense proved beyond a reasonable doubt ...." (Footnote in original.) State v. Ray , supra, 290 Conn. at 605-606, 966 A.2d 148.
In State v. Ray , supra, 290 Conn. at 609-13, 966 A.2d 148, we first addressed the vitality of this court's cases considering the proof of drug dependency under § 21a-278 (b) in conjunction with § 21a-269, in particular State v. Januszewski , 182 Conn. 142, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed. 2d 1005 (1981), and State v. Hart , 221 Conn. 595, 605 A.2d 1366 (1992). In Januszewski , this court held that, under the predecessor statutes to §§ 21a-269 and 21a-278, the burden was on the defendant to produce "some substantial evidence tending to prove his drug dependency at the time of the offense" in order to make "the matter of his drug dependency ... an issue in the case ...." State v. Januszewski , supra, at 169, 438 A.2d 679. Once the defendant placed his drug dependency in issue, the "burden rest[ed] on the state, as it does in all other essential elements in the case, to prove beyond a reasonable doubt that the accused was not entitled to the benefit **793 of [the] excuse, proviso or exemption claimed by him." (Internal quotation marks omitted.) Id.
Subsequently, in State v. Hart , supra, 221 Conn. at 607, 605 A.2d 1366, a majority of this court concluded, over a lengthy dissent by Justice Berdon; see footnote 20 of this opinion; that " Januszewski had been incorrectly decided and that the defendant should bear the burden of proving by a preponderance of the evidence that he was dependent on drugs under § 21a-278 (b)." State v. Ray , supra, 290 Conn. at 610, 966 A.2d 148. "The majority [in Hart ] determined that, under Januszewski , the absence of drug dependency was not an element of § 21a-278 (b), but, rather, drug-dependency was an exception to that statute within the meaning of § 21a-269.... The majority then concluded that it would 'overly strain the language [of § 21a-269 ] that places the "burden of proof" on a defendant to construe it merely to mean ... that the defendant need only raise some evidence of his or her drug dependency to shift the burden to the state to prove a negative, i.e., lack of drug dependency, beyond a reasonable doubt.' ... Accordingly, a majority of this court overruled what we characterized as dicta in [ State v. Brown , 163 Conn. 52, 66-67, 301 A.2d 547 (1972) ] and Januszewski that, once the defendant has produced some evidence that he is dependent on drugs, the burden shifts to the state to prove beyond a reasonable doubt that the defendant is not drug-dependent.... Rather, we concluded that '§ 21a-269 assigns to the defendant the burden of persuading the jury by a preponderance of the evidence that he or she is drug-dependent.' ...
"Finally, the majority [in Hart ] rejected the defendant's claim that this construction of § 21a-278 (b) was unconstitutional because it relieved the state of its burden of proving all of the elements of the offense.... We noted that, under the decisions of the United States Supreme Court in McMillan v. Pennsylvania , 477 U.S. 79, 85, 106 S.Ct. 2411, 91 L.Ed. 2d 67 (1986), and **794 Patterson v. New York , [432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed. 2d 281 (1977) ], '[t]he federal due process clause does not bar state legislatures from placing the burden on a defendant to prove an affirmative defense or to prove that he or she falls within an exemption to liability for an offense.' " (Citations omitted; footnote *1203 omitted.) State v. Ray , supra, 290 Conn. at 610-11, 966 A.2d 148 ; see State v. Hart , supra, 221 Conn. at 608-11, 605 A.2d 1366.
Subsequently, in Ray , we declined the defendant's invitation to follow the analysis of Justice Berdon's dissent in Hart ,[20] which interpreted § 21a-278 (b) to be "effectively ... an aggravated form of § 21a-277" and concluded that, "therefore, the 'not ... a drug-dependent person' language in § 21a-278 (b) constitutes an **795 aggravating factor that must be treated as an element and must be proven by the state." State v. Ray , supra, 290 Conn. at 613, 966 A.2d 148. Observing specifically that § 21a-278 (b) lacked language "that typically connotes an exception," we acknowledged that "we might find persuasive" the defendant's interpretation in Ray of the statute's legislative history and language "[i]f we were writing on a blank slate." Id., at 614, 605 A.2d 1366. Nevertheless, we relied on the doctrine of stare decisis in declining to disturb State v. Hart , supra, 221 Conn. at 595, 605 A.2d 1366, emphasizing the apparent legislative acquiescence to that decision. State v. Ray , supra, at 614-15, 966 A.2d 148 ; see id., at 615, 605 A.2d 1366 (finding "significant that the legislature has amended § 21a-278 [b] several times since our decision in Hart , and has chosen not to amend the statute to clarify that the absence of drug dependency was intended to be an element of the offense"). We reemphasized that "public policy militates strongly" in favor of the existing construction, given the difficulty for the state of disproving drug dependency in the first instance; id. ; as "[a] defendant's drug dependency at the specific point of time in the past at which the offense occurred is certainly a matter ... within his own knowledge." (Internal quotation marks omitted.) State v. Hart , supra, at 610, 605 A.2d 1366 ; see id. (noting that § 21a-269"appears to be an implicit recognition by the legislature of the difficulty created when any party is given the burden of proving the nonexistence of a certain fact, especially where, as in this case, the fact is the nonexistence of a physical status of the defendant at one, *1204 usually distant, point prior in time," and that, unlike mental disease or defect, rules of practice do not provide "method by which to discover whether drug dependency will be an issue at trial" [internal quotation marks omitted] ). Accordingly, in Ray , we "decline[d] to overrule our holdings in Januszewski and Hart that § 21a-278 (b) creates an exception for drug-dependent persons, and that the absence of drug dependency is not **796 an element of the offense. For similar reasons, we decline[d] to overrule our decision in Hart that the 'burden of proof' language of § 21a-269 requires the defendant to prove an exception by a preponderance of the evidence." State v. Ray , supra, at 616, 966 A.2d 148.
In Ray , we next "address[ed] the defendant's claim that the requirement that the defendant prove drug dependency by a preponderance of the evidence under §§ 21a-278 (b) and 21a-269 is unconstitutional under the United States Supreme Court's decision in Apprendi v. New Jersey , [supra, 530 U.S. at 466, 120 S.Ct. 2348], and its progeny." State v. Ray , supra, 290 Conn. at 616, 966 A.2d 148. In Apprendi , the United States Supreme Court held that, "under the [d]ue [p]rocess [c]lause of the [f]ifth [a]mendment, and the notice and jury trial guarantees of the [s]ixth amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." (Internal quotation marks omitted.) Apprendi v. New Jersey , supra, at 476, 120 S.Ct. 2348.
In addressing the defendant's constitutional claim in Ray , we first conducted a survey of the relevant case law from the United States Supreme Court leading to Apprendi , namely, Patterson v. New York , supra, 432 U.S. at 197, 97 S.Ct. 2319, McMillan v. Pennsylvania , supra, 477 U.S. at 79, 106 S.Ct. 2411, and Mullaney v. Wilbur , 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed. 2d 508 (1975).[21] See **797 State v. Ray , supra, 290 Conn. at 618-22, 966 A.2d 148. Applying the principles of those cases, we concluded in Ray "that placing the burden on the defendant to prove by a preponderance of the evidence a fact-drug dependency-that affects the severity of his punishment under § 21a-278 (b)" is not unconstitutional. Id., at 623, 605 A.2d 1366. We emphasized that the "defendant has not cited, and our research has not revealed, any authority for the proposition that drug dependency is the type of fact that constitutionally may not be treated as an affirmative defense under *1205 Patterson v. New York , supra, 432 U.S. at 210, 97 S.Ct. 2319.... Accordingly, the statute falls squarely within the holding of Patterson that the states constitutionally may treat mitigating circumstances as affirmative defenses.... We conclude, therefore, that placing the burden on the defendant to prove drug dependency under the statute is constitutional."[22] (Citation **798 omitted.) State v. Ray , supra, at 624, 966 A.2d 148 ; see also id., at 626, 966 A.2d 148 ("it is not unconstitutional to require the defendant to prove his drug dependency by a preponderance of the evidence under §§ 21a-278 (b) and 21a-269"). With this review of Ray in mind, we now turn to the defendant's claims in the present appeal.
A
We begin with the defendant's claim that the Supreme Court's decision in Alleyne v. United States , supra, 570 U.S. at 99, 133 S.Ct. 2151, requires us to overrule State v. Ray , supra, 290 Conn. at 602, 966 A.2d 148, in which we held that the state was not constitutionally required to prove lack of drug dependency under § 21a-278 (b) because it is an affirmative defense that would mitigate a sentence. The defendant argues that Ray 's analysis of § 21a-278 (b) is improperly formalistic, in contrast to the substantive inquiry required by Apprendi and Alleyne , which requires consideration of the "effect" of the statutory language. The defendant contends that lack of drug dependency has the effect of increasing punishment "above what is otherwise legally prescribed"; Alleyne v. United States , supra, at 108, 133 S.Ct. 2151 ; by the otherwise identical § 21a-277 (a) and, therefore, is an element of the offense to be proven by the state. Accordingly, the defendant argues that the imposition of a mandatory minimum sentence was improper because the state did not prove, nor did the defendant admit, a lack of drug dependency. In response, the state contends that Alleyne does not undermine Ray because Alleyne is merely an extension of Apprendi , and we recognized in Ray that Apprendi neither affected facts that apply to mitigate a defendant's punishment or liability, nor overruled Patterson v. New York , supra, 432 U.S. at 210, 97 S.Ct. 2319, which held that states, consistent with due process, may treat mitigating circumstances as affirmative defenses that the defendant must prove by a preponderance of the evidence. We agree with the state and conclude that the constitutional **799 analysis in Ray remains good law subsequent to the United States Supreme Court's decision in Alleyne . *1206 In Alleyne , the Supreme Court considered whether to overrule Harris v. United States , 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed. 2d 524 (2002), which had "held that judicial [fact-finding] that increases the mandatory minimum sentence for a crime is permissible under the [s]ixth [a]mendment." Alleyne v. United States , supra, 570 U.S. at 103, 133 S.Ct. 2151. The Supreme Court noted that " Harris drew a distinction between facts that increase the statutory maximum and facts that increase only the mandatory minimum," and overruled Harris and its earlier decision in McMillan v. Pennsylvania , supra, 477 U.S. at 79, 106 S.Ct. 2411, because "this distinction is inconsistent with our decision in Apprendi v. New Jersey , [supra, 530 U.S. at 466, 120 S.Ct. 2348], and with the original meaning of the [s]ixth [a]mendment. Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt.... Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." (Citation omitted.) Alleyne v. United States , supra, at 103, 133 S.Ct. 2151 ; see also id., at 118, 133 S.Ct. 2151 (Sotomayor, J., concurring) (recognizing overruling of McMillan ). The court determined that the "essential point is that the aggravating fact produced a higher range, which, in turn, conclusively indicates that the fact is an element of a distinct and aggravated crime. It must, therefore, be submitted to the jury and found beyond a reasonable doubt."[23] Id., at 115-16, 133 S.Ct. 2151 ; see also **800 United States v. Delgado-Marrero , 744 F.3d 167, 191-92 (1st Cir. 2014) (failure to obtain jury findings of drug quantities required reversal of "aggravated crimes" triggering mandatory minimum sentence, but not underlying "core" narcotics and conspiracy offenses that did not have quantity as element, allowing for defendant to be "subject ... to the default statutory range of penalties ... regardless of the drug quantity involved"); State v. Estrella J.C. , 169 Conn. App. 56, 87-89, 148 A.3d 594 (2016) (noting that Alleyne required trial court to instruct jury that it had make specific finding that victim was under age of thirteen years at time of commission of crime for purposes of mandatory minimum under General Statutes § 53-21 [a] [2], but concluding that failure to do so was harmless error given lack of dispute over victim's age and fact that she was eleven years old at trial).
In considering whether Alleyne requires us to overrule Ray , we deem significant that Alleyne , like Apprendi , on which Alleyne is based, accords with Patterson v. New York , supra, 432 U.S. at 197, 97 S.Ct. 2319, insofar as it does not preclude states from utilizing affirmative defenses to mitigate or eliminate criminal liability. The decision of the United States Court of Appeals for the Seventh Circuit in *1207 United States v. Zuniga , 767 F.3d 712 (7th Cir. 2014), cert. denied, --- U.S. ----, 135 S.Ct. 1018, 190 L.Ed. 2d 886 (2015), is instructive on this point. In Zuniga , the Seventh Circuit, following its earlier decision in United States v. Brown , 276 F.3d 930, 933 (7th Cir.), cert. denied, 537 U.S. 829, 123 S.Ct. 126, 154 L.Ed. 2d 43 (2002), rejected an Apprendi challenge to the federal Armed Career Criminal Act, which placed the burden on the defendant to prove that his offense did not qualify as a serious violent felony for purposes **801 of relief from the federal "three strikes" law; see 18 U.S.C. § 921 (a) (20) (2012) ; because, "while the prosecution must prove all elements of the charged offense beyond a reasonable doubt, legislation that creates affirmative defenses can place the burden of proving that affirmative defense on the defendant without violating Apprendi ."[24] United States v. Zuniga , supra, at 718-19. The Seventh Circuit reasoned that, because "the principle applied in Apprendi applies with equal force to facts increasing the mandatory minimum [under Alleyne ] there is no reason we cannot apply the logic used in Brown ...." Id., at 719. Emphasizing that multiple circuit courts of appeals had previously interpreted the civil rights restoration section of the three strikes law to be an affirmative defense, rather than an element of the offense, the Seventh Circuit concluded that "the [D]istrict [C]ourt properly decided whether [the defendant's] civil rights were restored because the underlying facts that could support that determination constitute an affirmative defense, not an element of the offense, and are not covered by Alleyne ." Id. ; see also, e.g., United States v. Blake , 858 F.3d 1134, 1137 (8th Cir.) ( Alleyne did not require fact-finding by jury with respect to robbery safety valve under federal three strikes statute, 18 U.S.C. § 3559 [c] [3] [A], because it is affirmative **802 defense that decreases sentence from mandatory life term), cert. denied, --- U.S. ----, 138 S.Ct. 257, 199 L.Ed. 2d 166 (2017) ; United States v. Lizarraga-Carrizales , 757 F.3d 995, 999 (9th Cir. 2014) ( Alleyne did not require fact-finding by jury with respect to criminal history points for purposes of safety valve relief from narcotics mandatory minimum sentences under 18 U.S.C. § 3553 [f] [1] because defendant bears burden of proving entitlement), cert. denied, --- U.S. ----, 135 S.Ct. 1191, 191 L.Ed. 2d 145 (2015) ; United States v. Harakaly , 734 F.3d 88, 99 (1st Cir. 2013) (Rejecting Alleyne challenge to District Court's finding, for purposes of safety valve under 18 U.S.C. § 3553 [f] [4], that defendant had managerial role in narcotics conspiracy because "the jury verdict or guilty plea sets the baseline sentencing range based upon the minimum and maximum sentences, if any, authorized by statute for the offense of conviction. Judicial fact-finding that precludes safety-valve relief is permissible because it does not increase that baseline minimum sentence."), *1208 cert. denied, --- U.S. ----, 134 S.Ct. 1530, 188 L.Ed. 2d 462 (2014).
We conclude that State v. Ray , supra, 290 Conn. 602, 966 A.2d 148, remains good law in the wake of Alleyne . Although Alleyne extended Apprendi to mandatory minimum sentences, Alleyne did not disturb those portions of Apprendi that reaffirmed Patterson v. New York , supra, 432 U.S. at 208-10, 97 S.Ct. 2319, which upheld the states' prerogative to utilize affirmative defenses to mitigate or eliminate criminal liability without running afoul of due process. Moreover, Alleyne did nothing to disturb long-standing Supreme Court precedent holding that whether a sentencing factor is, in essence, an element requiring the state to plead and prove it beyond a reasonable doubt, or an affirmative defense, the pleading and proof of which may be allocated to the defendant, is a matter of state law for "authoritative" determination by state **803 courts interpreting state statutes; Ring v. Arizona , 536 U.S. 584, 603, 122 S.Ct. 2428, 153 L.Ed. 2d 556 (2002) ; insofar as "state courts are the ultimate expositors of state law," binding the federal courts "except in extreme circumstances ...." Mullaney v. Wilbur , supra, 421 U.S. at 691, 95 S.Ct. 1881 ; see also, e.g., Riley v. Kennedy , 553 U.S. 406, 425, 128 S.Ct. 1970, 170 L.Ed. 2d 837 (2008) ; Bradshaw v. Richey , 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed. 2d 407 (2005). Accordingly, we now turn to the defendant's request that we reinterpret § 21a-278 (b) to render lack of drug dependency an element of that offense, thus requiring the state to plead and prove a lack of drug dependency to trigger the mandatory minimum sentence, in order for the statute to pass constitutional muster under Alleyne .
B
The defendant asks us to overrule State v. Ray , supra, 290 Conn. at 595, 966 A.2d 148, as a matter of statutory interpretation, contending that the construction process required by General Statutes § 1-2z demonstrates that lack of drug dependency under § 21a-278 (b) is an element to be proven by the state, rather than an affirmative defense to be pleaded and proven by the defendant. In particular, the defendant compares § 21a-278 (b) to other criminal statutes and emphasizes its lack of language signaling that drug dependency is an affirmative defense, and that other criminal statutes treat the absence of a fact, such as consent, as an element. The defendant also relies on legislative history supporting the proposition that "[t]he enactment of § 21a-278 (b)... was intended to create an aggravated form of § 21a-277 (a), with a harsher punishment for nonaddicted predators who sold drugs for profit." In response, the state contends that the doctrine of stare decisis counsels in favor of not overruling Ray , emphasizing recent amendments to §§ 21a-277 (a) and 21a-278 (b)
**804 in P.A. 17-17,[25] by which the *1209 legislature specifically intended to clarify, but not substantively change, the narcotics statutes. We agree with the state and decline the defendant's invitation to overrule Ray as a matter of statutory construction.
The governing principles are well settled. "The doctrine of stare decisis counsels that a court should not **805 overrule its earlier decisions unless the most cogent reasons and inescapable logic require it.... Stare decisis is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency.... It is the most important application of a theory of decisionmaking consistency in our legal culture and ... is an obvious manifestation of the notion that decisionmaking consistency itself has normative value....
"Moreover, [i]n evaluating the force of stare decisis, our case law dictates that we should be especially wary of overturning a decision that involves the construction of a statute.... When we construe a statute, we act not as plenary lawgivers but as surrogates for another policy maker, [that is] the legislature. In our role as surrogates, our only responsibility is to determine what the legislature, within constitutional limits, intended to do. Sometimes, when we have made such a determination, the legislature instructs us that we have misconstrued its intentions. We are bound by the instructions so provided.... More often, however, the legislature takes no further action to clarify its intentions. Time and again, we have characterized the failure of the legislature to take corrective action as manifesting the legislature's acquiescence in our construction of a statute.... Once an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision....
"Factors that may justify overruling a prior decision interpreting a statutory provision include intervening developments in the law, the potential for unconscionable results, the potential for irreconcilable conflicts and difficulty in applying the interpretation.... In **806 addition, a departure from precedent may be justified when the rule to be discarded may not be reasonably supposed to *1210 have determined the conduct of the litigants ...." (Citations omitted; internal quotation marks omitted.) Spiotti v. Wolcott , 326 Conn. 190, 201-203, 163 A.3d 46 (2017) ; see also, e.g., State v. Ray , supra, 290 Conn. at 614-15, 966 A.2d 148 ; State v. Salamon , 287 Conn. 509, 519-22, 949 A.2d 1092 (2008).
As we observed in State v. Ray , supra, 290 Conn. at 614, 966 A.2d 148, "[i]f we were writing on a blank slate, we might find persuasive" the defendant's interpretation of § 21a-278 (b), given the language of the statute and the fact that it "finds some support in the chronology of the statutes and the [statute's] legislative history ...." The doctrine of legislative acquiescence has, however, even more strength now than when we considered the identical issue in Ray . As the state points out, the legislature very recently amended our narcotics statutes in P.A. 17-17, "An Act Implementing the Recommendations of the Connecticut Sentencing Commission Concerning a Technical Reorganization of Statutes Involving the Illegal Sale of Controlled Substances." The amendments did not in any way change the language of § 21a-278 (b) that we considered in Ray , which is strongly indicative of legislative acquiescence to the interpretation in that case. See P.A. 17-17, § 2; see also footnotes 1 and 25 of this opinion.
Moreover, the legislative history of P.A. 17-17 demonstrates that the amendments, which were recommended by the Connecticut Sentencing Commission after collaboration between the Judicial Branch, the Office of the Chief Public Defender, and the Division of Criminal Justice, were intended to be clarifying and not to make substantive changes to the narcotics **807 statutes.[26] See 60 S. Proc., Pt. 2, 2017 Sess., p. 797, remarks of Senator John Kissel (stating that bill "essentially in a nutshell rationalizes this section of the statutes but in no way changes any of the substance of our criminal justice laws affecting drugs and drug law violations"); 60 H.R. Proc., Pt. 9, 2017 Sess., p. 3594, remarks of Representative Steven Stafstrom ("This bill comes to us from our sentencing commission and recommends technical changes to reorganize our drug statutes in order to make them more user and reader friendly. I will emphasize that this bill ... does not in any way change any of the existing penalties under our drug statutes."). *1211 "[T]he legislature is presumed to be aware of the [courts'] interpretation of a statute and ... its subsequent nonaction may be understood as a validation of that interpretation, particularly when it affirmatively amended the statute subsequent to [such] **808 interpretation, but chose not to amend the specific provision of the statute at issue." (Internal quotation marks omitted.) Dairyland Ins. Co. v. Mitchell , 320 Conn. 205, 215, 128 A.3d 931 (2016) ; see, e.g., Spiotti v. Wolcott , supra, 326 Conn. at 203, 163 A.3d 46 (declining to overrule Genovese v. Gallo Wine Merchants, Inc. , 226 Conn. 475, 628 A.2d 946 [1993], because legislature had, over twenty-four year period, "taken no action that would suggest that it disagreed with our conclusion that [General Statutes] § 31-51bb was intended to bar the application of the doctrine of collateral estoppel to claims of statutory and constitutional violations brought after a claim involving the same issues had been finally resolved in grievance procedures or arbitration," despite this court's "implicit invitation" to reconsider that statute); In re Tyriq T. , 313 Conn. 99, 114, 96 A.3d 494 (2014) ("[b]y choosing not to legislatively overrule In re Daniel H. , [237 Conn. 364, 678 A.2d 462 (1996) ], the legislature has acquiesced to this court's interpretation that the deletion of the final judgment language from the mandatory transfer provision was the elimination of the right to an immediate appeal"). Given the very recent changes to our narcotics statutes in P.A. 17-17, the language and legislative history of which demonstrate that the legislature did not intend to effect any substantive changes to the law, we similarly decline to disturb our long-standing interpretation of § 21a-278 (b) making drug dependency an affirmative defense, most recently in State v. Ray , supra, 290 Conn. at 602, 966 A.2d 148.
III
Relying largely on this court's decision in State v. McCahill , 261 Conn. 492, 811 A.2d 667 (2002), the defendant also contends that construing drug dependency as an affirmative defense under § 21a-278 (b), whose elements are "otherwise identical" to § 21a-277 (a), violates the separation of powers under article second of the Connecticut constitution, as amended by article **809 eighteen of the amendments, by improperly allocating the judicial power of sentencing to the prosecutor, an executive branch actor who chooses the charges to file.[27] In response, the state contends that this issue is controlled by this court's decision in State v. Darden , 171 Conn. 677, 372 A.2d 99 (1976), which rejected a similar separation of powers challenge to a mandatory minimum sentencing scheme in the context of the larceny and robbery statutes. We agree with the state and conclude that the mandatory minimum sentence provision of § 21a-278 (b) does not violate the separation of powers. *1212 "We begin with the well established proposition that [b]ecause a validly enacted statute carries with it a strong presumption of constitutionality, those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt.... In construing a statute, moreover, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent.... We also note that, [w]hen a question of constitutionality is raised, courts must approach it with caution, examine it with care, and sustain the legislation unless its invalidity is clear.... **810 "[T]he primary purpose of [the separation of powers] doctrine is to prevent commingling of different powers of government in the same hands.... The constitution achieves this purpose by prescribing limitations and duties for each branch that are essential to each branch's independence and performance of assigned powers.... It is axiomatic that no branch of government organized under a constitution may exercise any power that is not explicitly bestowed by that constitution or that is not essential to the exercise thereof.... [Thus] [t]he separation of powers doctrine serves a dual function: it limits the exercise of power within each branch, yet ensures the independent exercise of that power....
"In the context of challenges to statutes whose constitutional infirmity is claimed to flow from impermissible intrusion upon the judicial power, we have refused to find constitutional impropriety in a statute simply because it affects the judicial function .... A statute violates the constitutional mandate for a separate judicial magistracy only if it represents an effort by the legislature to exercise a power which lies exclusively under the control of the courts ... or if it establishes a significant interference with the orderly conduct of the Superior Court's judicial functions.... In accordance with these principles, a two part inquiry has emerged to evaluate the constitutionality of a statute that is alleged to violate separation of powers principles by impermissibly infringing on the judicial authority.... A statute will be held unconstitutional on those grounds if: (1) it governs subject matter that not only falls within the judicial power, but also lies exclusively within judicial control; or (2) it significantly interferes with the orderly functioning of the Superior Court's judicial role." (Citations omitted; internal quotation marks omitted.) State v. McCahill , supra, 261 Conn. at 504-506, 811 A.2d 667 ; see also, e.g., **811 Persels & Associates, LLC v. Banking Commissioner , 318 Conn. 652, 668-70, 122 A.3d 592 (2015) (collecting cases).
As the state argues, resolution of the defendant's separation of powers claim is squarely controlled by this court's 1976 decision in State v. Darden , supra, 171 Conn. at 677, 372 A.2d 99. In Darden , the defendant raised a separation of powers challenge to the second degree robbery statute, which imposed a mandatory minimum sentence of five years imprisonment. See id., at 678, 372 A.2d 99. Applying the well settled test for determining whether a statute violates the separation of powers, the court observed that it "is rudimentary that the three branches of government do not exist in discrete, airtight compartments, and that the rule of separation of governmental powers cannot always be rigidly applied.... In this context it must be remembered that the constitution assigns to the legislature the power to enact laws defining crimes and fixing the degree and method of punishment and to the judiciary the power to try offenses under these laws and impose punishment within the *1213 limits and according to the methods therein provided....
"In other words, the judiciary's power to impose a particular sentence is defined by the legislature, and there is no constitutional requirement that courts be given discretion in imposing a sentence.... In addition, the legislature may impose mandatory minimum terms of imprisonment for certain crimes, and may preclude the probation or suspension of a sentence." (Citations omitted.) Id., at 679-80, 372 A.2d 99.
Noting that other federal and state courts have upheld mandatory minimum sentences, this court rejected the defendant's claim that the legislature had "unduly impinged upon the powers of the judiciary" by imposing a mandatory minimum sentence in the second degree **812 robbery statute.[28] Id., at 681, 372 A.2d 99. Most significantly, the court rejected the argument that "a mandatory sentencing statute unconstitutionally delegates judicial power to the state's attorney because the latter could choose to prosecute for a crime which carries a mandatory sentence instead of for a crime which carries no such penalty."[29] Id., at 682, 372 A.2d 99. Relying on the New York Court of Appeals' decision in People v. Eboli , 34 N.Y.2d 281, 313 N.E.2d 746, 357 N.Y.S.2d 435 (1974), this court observed that a "state's attorney has great responsibility and broad discretion with respect to selecting an appropriate charge. That power, however, is limited in the usual and lawful manner by the facts which the prosecutor may be reasonably expected to prove at trial.... There is no claim ... that the state's attorney abused his discretion, and in fact the defendant was found guilty as charged in the information. Nor has the defendant challenged the sufficiency of the evidence to sustain his conviction. Under the circumstances, we cannot find a deprivation of constitutional rights."[30] (Citation **813 omitted.) State v. Darden , supra, 171 Conn. at 682, 372 A.2d 99 ; see *1214 id., at 682-83, 372 A.2d 99 (noting that jury could have found defendant guilty of lesser included offense of third degree robbery, which "carries no mandatory minimum sentence").
We disagree with the defendant's argument that Darden is distinguishable because it involved a single statute, in contrast to the present case, which has two "statutes with identical elements yet different sentencing provisions," insofar as in Darden , "[t]he prosecutor did not have the choice ... between ranges of punishment for proof of identical elements." The prosecutor's choice, however, arises from the legislature's decision to classify narcotics offenses in the manner of §§ 21a-277 (a) and 21a-278 (b), which is consistent with its constitutionally assigned responsibility.[31] See State v. Darden , supra, 171 Conn. at 679-80, 372 A.2d 99. Given the legislature's public policy decision to render these choices available to the prosecutor, the decision to charge under § 21a-278 (b) rather than § 21a-277 (a) is fundamentally no **814 different from the decision to charge robbery rather than a lesser offense of larceny. See People v. Eboli , supra, 34 N.Y.2d at 289-90, 357 N.Y.S.2d 435, 313 N.E.2d 746 (rejecting constitutional challenge to identically phrased first and second degree coercion statutes, which were felony and misdemeanor respectively, because, regardless of applicable statutory language, prosecutors ultimately retain discretion to make charging decisions that can significantly affect potential penalties); cf. State v. O'Neill , 200 Conn. 268, 278-80, 511 A.2d 321 (1986) (consistent with disjunctive "options" provided by statute, prosecutor has "broad discretion" to charge arson offenses in way that precludes lesser included offense instruction or requires mandatory minimum sentence upon conviction); State v. Vaughn , 20 Conn. App. 386, 391-92, 567 A.2d 392 (1989) (rejecting claim that prosecutor abused discretion by charging violation of § 21a-278 [b] "just to obtain a harsher sentence, when [the prosecutor] could have charged [the defendant] with a violation of ... § 21a-277," given prosecutor's "considerable latitude" in charging and fact that defendant had "no constitutional right to elect which of two applicable statutes [would] be the basis of his indictment and prosecution" [internal quotation marks omitted] ).
Thus, we emphasize that "it is well settled that a legislature can exercise its right to limit judicial discretion in sentencing by bestowing on prosecutors the right to make decisions that may curtail judicial discretion" because it is the legislative branch "that has the power to define a crime and set its punishment. Notwithstanding that we judges may have imposed a lesser sentence in the case before us, and question the application of draconian mandatory minimum sentences in some cases, our jurisprudential hands are tied. The *1215 great [Benjamin N.] Cardozo taught us long ago: The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. [B. Cardozo, The Nature of the **815 Judicial Process (1921), p. 141]. Although we recognize that a host of inequities inhere in many large mandatory sentences, the relief must come from the legislative arm of government and not from ... judges ...." (Internal quotation marks omitted.) United States v. MacEwan , 445 F.3d 237, 252 (3d Cir.), cert. denied, 549 U.S. 882, 127 S.Ct. 208, 166 L.Ed. 2d 144 (2006). We conclude, therefore, that the trial court properly denied the defendant's motion to correct an illegal sentence.
The judgment is affirmed.
In this opinion the other justices concurred.

General Statutes (Rev. to 2011) § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance, except as authorized in this chapter, and who is not, at the time of such action, a drug-dependent person, for a first offense shall be imprisoned not less than five years or more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years or more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended, except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years, or (2) such person's mental capacity was significantly impaired, but not so impaired as to constitute a defense to prosecution."
We note that the legislature has recently amended § 21a-278. See Public Acts 2017, No. 17-17, § 2; see also part II B and footnote 25 of this opinion. For the sake of convenience, all references to § 21a-278 in this opinion are to the 2011 revision of the statute.

The defendant appealed from the judgment of the trial court to the Appellate Court, and we granted his motion to transfer his appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

General Statutes (Rev. to 2011) § 21a-277 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."
We note that the legislature has recently amended § 21a-277. See P.A. 17-17, § 1; see also part II B and footnote 25 of this opinion. For the sake of convenience, all references to § 21a-277 in this opinion, unless otherwise noted, are to the 2011 revision of the statute.

North Carolina v. Alford , 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970).

After the defendant pleaded guilty to one count of violating § 21a-278 (b), the prosecutor stated the following as a factual basis for the plea: "On or about [May 19, 2011], Bristol police in working with the statewide narcotics [task force] knew that [the defendant] was moving some weights of cocaine, illegal drug, narcotics, if you will. They got a [confidential informant] to do some buys under their supervision.
"[The defendant] did trade ... on or about [May 19, 2011], those narcotics for [United States] currency. [A] couple of other ... sales occurred on [May 19, 2011], and [June 8, 2011], just to [establish] beyond a reasonable doubt in our minds that he was an ongoing drug dealer. We're not going to make him ... plead to those other two cases.
"Later on, during the course of the investigation, I believe it was when we had effected, if you will, the sale warrants, written and got them signed by a judge, they went to his location in New Britain ... a place he was known to lay his head from time to time. When they were going to arrest him there on those warrants, he came around the corner, saw them, clearly in front of the police tossed down a knotted clear baggie that ended up containing ... more than one ounce of, I believe his drug of choice here is, crack cocaine, that is correct. So [those are] the facts as to those two § 21a-278 (b) files."

Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

The defendant previously had filed a motion to correct an illegal sentence on June 13, 2012, challenging various aspects of his plea and sentencing, including the adequacy of the canvass and a claim that the sentence was a double jeopardy violation. In a judgment later affirmed by the Appellate Court; see State v. Evans , 150 Conn. App. 905, 93 A.3d 182 (2014) ; the trial court, Strackbein, J. , denied or dismissed the claims raised in that motion through a memorandum of decision issued on February 7, 2013.

The trial court also observed that the defendant's Alford plea constituted a concession that the state could prove a violation of § 21a-278 (b), which applies to individuals who are not drug-dependent, and that he never argued that he should have been permitted "to plead under § 21a-277 (a), which applies to ... drug-dependent person[s]."

The trial court also rejected the defendant's claims that his sentence was illegal because it violated (1) his state and federal constitutional rights to equal protection of the laws, (2) article first, § 9, of the Connecticut constitution, (3) "the intent of the legislature and the rule of lenity," and (4) his state and federal constitutional rights to due process because the court was unaware of the permissible sentencing range and "there is no rational basis for having two statutes punishing the exact same behavior with differing punishments." The defendant does not renew these claims in the present appeal, and we do not address those issues further.

We note that the defendant has briefed separate claims that the trial court imposed his sentence in an illegal manner on the basis of the court's "inaccurate understanding as to the available statutory range of punishments that resulted from the prosecution's failure to prove the fact triggering the mandatory minimum sentence." We do not address these claims separately, because their resolution is subsumed in the defendant's more specific challenges to State v. Ray , supra, 290 Conn. at 602, 966 A.2d 148.

Although the state did not raise these jurisdictional claims before the trial court, we review them on appeal because "challenges to the trial court's subject matter jurisdiction may be raised at any time by either party or the court." State v. Delgado , supra, 323 Conn. at 813, 151 A.3d 345.

We note that the state also argues that the court lacked jurisdiction over the defendant's motion to correct because the federal courts have uniformly determined that Alleyne is not retroactively applicable on collateral review to cases that became final prior to the date of its release. See, e.g., Walker v. United States , 810 F.3d 568, 574-75 (8th Cir.), cert. denied, --- U.S. ----, 136 S.Ct. 2042, 195 L.Ed. 2d 240 (2016) ; Crayton v. United States , 799 F.3d 623, 624 (7th Cir.), cert. denied, --- U.S. ----, 136 S.Ct. 424, 193 L.Ed. 2d 319 (2015). The state posits that a motion to correct an illegal sentence is collateral in nature, insofar as it takes place outside the direct appellate process. In response, the defendant argues in his reply brief that we should not reach this argument because the state waived it by failing to raise it before the trial court, and he also cites State v. Casiano , 282 Conn. 614, 625 n.15, 922 A.2d 1065 (2007), for the proposition that a motion to correct "is not collateral to or separate from the underlying criminal action because it directly implicates the legality of the sentencing proceeding and is addressed to the sentencing court itself."
We decline to reach the state's arguments with respect to the retroactivity of Alleyne . Although jurisdictional issues may be raised at any time, the state's arguments with respect to retroactivity relate to the merits of the motion to correct, rather than the court's jurisdiction over it. See footnote 16 of this opinion. Moreover, the state does not suggest that there are any exceptional circumstances that would allow it to assert an unpreserved issue as an alternative ground on which to reject the defendant's constitutional claim. See Blumberg Associates Worldwide, Inc. v. Brown & Brown of Connecticut, Inc. , 311 Conn. 123, 142-43, 84 A.3d 840 (2014) ; see also id., at 159-60, 84 A.3d 840 (" 'exceptional circumstances' " required for review of unpreserved claims). Accordingly, we leave to another day the retroactivity issues raised by the state with respect to Alleyne .

As Judge Bishop has recently observed, it is not always clear when a motion to correct an illegal sentence challenges a sentence rather than a conviction. See State v. McGee , 175 Conn. App. 566, 586, 168 A.3d 495 (Bishop, J. , dissenting) ("confusion abounds on the question of the jurisdiction of the trial court to hear a motion to correct an illegal sentence"), cert. denied, 327 Conn. 970, 173 A.3d 953 (2017). Judge Bishop notes that this confusion is particularly acute with respect to the second category of illegal sentences, namely, double jeopardy violations for multiple punishments, which by definition challenge convictions rather than the sentences for those convictions. See id., at 592-95, 168 A.3d 495 (questioning whether this court's line of cases under State v. Cator , supra, 256 Conn. at 785, 781 A.2d 285, was intended "to open wide the door to attacks on convictions through the guise of a Practice Book § 43-22 motion, nominally assailing a sentence," and stating that jurisdictional case law has "create[d] currents and crosscurrents in need of calming by a higher power"). In his thoughtful dissent in McGee , Judge Bishop suggested revisions to the case law governing motions to correct, including the imposition of time limitation and limiting vacation of convictions to cases in which "it is obvious from the criminal information and verdict that convictions violate the protection against double jeopardy," and "that such remedial action can only be taken before a defendant has commenced serving his or her sentence." Id., at 595-98, 168 A.3d 495. Although we leave the specific issues identified by Judge Bishop to another day, we nevertheless acknowledge that the demarcation between conviction and sentence may not always be crystal clear, particularly in cases presenting Apprendi issues, and may invoke the presumption in favor of jurisdiction in which the defendant has made a colorable-however doubtful-claim of illegality affecting the sentence , rather than the underlying conviction. See, e.g., State v. Fowlkes , 283 Conn. 735, 739, 930 A.2d 644 (2007) ; see also State v. Ramos, 306 Conn. 125, 134-35, 49 A.3d 197 (2012) (''although this court has recognized the general principle that there is a strong presumption in favor of jurisdiction ... in criminal cases, this principle is considered in light of the common-law rule, that once a defendant's sentence has begun [the] court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act'' [citations omitted; emphasis in original; internal quotation marks omitted] ).

Specifically, the defendant argues in his brief that §§ 21a-277 (a) and 21a-278 (b) are, in fact, the same offense insofar as they prohibit "identical conduct." He claims that § 21a-277 serves as the "base offense" and that the addition of drug dependency language renders § 21a-278 (b) simply an aggravated form of § 21a-277 (a) for purposes of proof as an element under federal constitutional law. He suggests, therefore, that he should be resentenced under § 21a-277 (a), with a maximum of fifteen years imprisonment and no mandatory minimum, insofar as § 21a-278 (b) only precludes the trial court from suspending, rather than reducing, the mandatory minimum. The defendant notes that the trial court "had the discretion to impose a nonmandatory minimum portion of the sentence by reducing the mandatory minimum sentence to no mandatory minimum," observing that, "although the mandatory minimum [under § 21a-278 (b) ] is nonsuspendable, it is not nonreducible." Cf. General Statutes § 53a-59a (d) (providing in relevant part that "[a]ny person found guilty under this section shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court"); General Statutes § 53a-70a (a) (2) ("ten years of the sentence imposed may not be suspended or reduced by the court"). The defendant also emphasizes that, "although § 21a-278 (b) does not provide for ... a nonmandatory sentence, such a sentence is permissible because §§ 21a-278 (b) and 21a-277 (a) have the same essential elements ... and § 21a-277 (a) provides for a sentence without a mandatory minimum." (Citation omitted.) See also General Statutes § 21a-283a (in sentencing defendant under certain narcotics statutes, including § 21a-278 [b], when facts of underlying offense "did not involve the use, attempted use or threatened use of physical force against another person or result in the physical injury or serious physical injury of another person, and in the commission of which such person neither was armed with nor threatened the use of or displayed or represented by word or conduct that such person possessed any firearm, deadly weapon or dangerous instrument ... the court may, upon a showing of good cause by the defendant, depart from the prescribed mandatory minimum sentence, provided the provisions of this section have not previously been invoked on the defendant's behalf and the court, at the time of sentencing, states in open court the reasons for imposing the particular sentence and the specific reason for imposing a sentence that departs from the prescribed mandatory minimum sentence"). Given this interpretation of the statutory scheme, the defendant then argues in his reply brief that "the remedy for an Apprendi or Alleyne error is to correct the sentence, not vacate the conviction," and that the "court has the common-law authority, as codified in [Practice Book] § 43-22, to hear an argument that a sentence is illegal because it exceeds the statutorily authorized sentence, and to order that such sentence be corrected so that it is legal and within the proper sentencing guidelines."

For other illustrative authorities with respect to the limits of a court's jurisdiction over a motion to correct an illegal sentence, compare State v. Delgado , supra, 323 Conn. at 809 n.6, 151 A.3d 345 (trial court had jurisdiction over motion to correct claiming that sentence of life without parole for juvenile, without consideration of mitigating factors, violated eighth amendment), State v. Martin M. , 143 Conn. App. 140, 143-44 and n.1, 70 A.3d 135 (trial court had jurisdiction over motion to correct claiming that sentencing court improperly relied on subsequently reversed kidnapping conviction in determining sentence), cert. denied, 309 Conn. 919, 70 A.3d 41 (2013), and State v. Koslik , supra, 116 Conn. App. at 700-701, 977 A.2d 275 (trial court had jurisdiction over motion to correct claiming that sentencing court had failed to make finding regarding repayment to victim that would permit imposition of three years of probation), with State v. Robles , 169 Conn. App. 127, 135, 150 A.3d 687 (2016) (trial court lacked jurisdiction over motion to correct claiming that sentence was illegal because it resulted from "guilty pleas to the kidnapping charges [that] are invalid as a result of [State v. Salamon , 287 Conn. 509, 949 A.2d 1092 (2008) ] and its progeny"), cert. denied, 324 Conn. 906, 152 A.3d 544 (2017), State v. Brescia , 122 Conn. App. 601, 606-607, 999 A.2d 848 (2010) (trial court lacked subject matter jurisdiction over motion to correct claiming that evidence only supported plea to conspiracy to commit forgery in second degree, rather than first degree, because sentence was legally authorized for first degree conviction), and State v. Starks , 121 Conn. App. 581, 589-90, 997 A.2d 546 (2010) (no jurisdiction over motion to correct, which was impermissible "collateral attack" on conviction, when "gravamen of the claim [was] that, at trial, the state did not present evidence sufficient to demonstrate that the defendant had violated § 21a-278 [b]" with respect to requisite quantity of drugs).

We acknowledge that our recent decision in State v. Delgado , supra, 323 Conn. at 801, 151 A.3d 345, appeared to analyze a motion to correct an illegal sentence in jurisdictional terms when subsequent legal developments affected its merits. In 2014, the defendant in Delgado filed a motion to correct, claiming that his sentence of sixty-five years imprisonment without parole was illegal under the United States Supreme Court's juvenile sentencing cases, including Miller v. Alabama , 567 U.S. 460, 465, 132 S.Ct. 2455, 183 L.Ed. 2d 407 (2012). See State v. Delgado , supra, at 803-807, 151 A.3d 345. The trial court dismissed the motion for lack of jurisdiction on the basis of its conclusion that Miller did not apply to the case. Id., at 809, 151 A.3d 345 n.6. On appeal, we first agreed with the state's concession that the trial court had improperly dismissed the motion because it raised a "viable claim by alleging that a sentence of life imprisonment without parole had been imposed without consideration of youth related mitigating factors." Id. Considering the effect of subsequently enacted legislation that afforded the defendant an opportunity for parole; see General Statutes § 54-125a ; Public Acts 2015, No. 15-84; we then concluded, as an "exception" to the "general principle that jurisdiction once acquired is not lost or divested by subsequent events," that, "the legal landscape concerning juvenile sentencing laws has changed so significantly that the remaining claims, which would have required resentencing when the motion to correct was filed, no longer require resentencing." (Internal quotation marks omitted.) State v. Delgado , supra, at 813, 151 A.3d 345. Concluding that the "defendant ha[d] not raised a colorable claim of invalidity that, if decided in his favor, would require resentencing"; id., at 812-13, 151 A.3d 345 ; we determined that "the trial court no longer possesse[d] jurisdiction over the defendant's motion to correct." Id., at 813, 151 A.3d 345.
We emphasize that Delgado does not stand for the proposition that the merits of a motion to correct are a jurisprudential ouroboros that are inextricably intertwined with the court's jurisdiction over the motion. Rather, we understand Delgado to be, in essence, a mootness decision, insofar as the subsequent statutory changes afforded the defendant all of the relief to which he was entitled from his pending motion to correct. See also St. Pierre v. Solnit , 233 Conn. 398, 401, 658 A.2d 977 (1995) ; Connecticut State Medical Society v. Commission on Hospitals & Health Care , 223 Conn. 450, 455, 612 A.2d 1217 (1992).

The doctrinal correctness of this assumption is highly dubious. Our case law suggests that any waiver would not affect the court's jurisdiction over the motion to correct but, rather, the merits with respect to whether the sentence had in fact been imposed in an illegal manner. See State v. T.D. , supra, 286 Conn. at 360 n.6, 944 A.2d 288 (collateral estoppel does not affect court's subject matter jurisdiction); State v. Pecor , 179 Conn. App. 864, 871-72, 181 A.3d 584 (2018) ("[T]he court could have granted the defendant relief by correcting the alleged illegal sentence that had been imposed .... Therefore, the issue was not moot. Furthermore, the court's conclusion that it lacked subject matter jurisdiction because the defendant was collaterally estopped from claiming that his new sentence was illegal was incorrect."); see also footnote 16 of this opinion.

Given relevant and unchallenged Connecticut authority, we decline to follow the unreported decision in People v. Faher , Docket No. 328285, 2016 WL 6127902, *4 (Mich. App. October 18, 2016), on which the state relies for the proposition that "when a sentencing court imposes a sentence pursuant to the terms of a plea agreement bargained for and accepted by the defendant, the sentence is not affected by the court's perception of the mandatory or advisory nature of the sentencing guidelines; thus the constitutional concerns underpinning ... Alleyne are not implicated."

General Statutes § 21a-269 provides: "In any complaint, information or indictment, and in any action or proceeding brought for the enforcement of any provision of this part, it shall not be necessary to negative any exception, excuse, proviso or exemption contained in said section, and the burden of proof of any such exception, excuse, proviso or exemption shall be upon the defendant."

In his dissenting opinion in State v. Hart , supra, 221 Conn. at 615-22, 605 A.2d 1366, "Justice Berdon contended that the absence of drug dependency is an element of § 21a-278 (b).... In support of this contention, he relied on the legislative history of the statute.... He noted that the sponsor of the bill, Representative Bernard Avcollie, had stated during debates on the proposed legislation that the intent of the bill is to give the state's attorney and the prosecuting attorney an opportunity to charge [a crime in addition to § 21a-277] which does carry a harder sentence which goes towards imprisoning the person who is not drug-dependent and who is, in fact, selling drugs for a profit.... Representative Avcollie also ... stated that in order to charge under this law, a state's attorney ... would have to take advantage of [§ 21a-277 (a) ] ... and have the party arrested and examined for drug dependency. In other words, you would first have to prove that he was or was not addicted and then charge him with the crime.... Justice Berdon argued that, in light of this legislative history, it was apparent that this court's holding in Januszewski , that the absence of drug dependency was not part of the prohibited conduct, was incorrect.... Rather, Justice Berdon argued, § 21a-278 (b) was promulgated for the sole purpose of making the charge of possession with intent to sell by a person who is not drug-dependent subject to more severe penalties than already available under existing law....
"Justice Berdon also pointed out that, [i]f an exception is an integral part of the enacting or prohibition clause of a criminal statute, it is deemed an essential element of the crime, and the state must plead and prove that the defendant is not within the exception.... Where an exception to a prohibition is situated separately from the enacting clause, the exception is to be proven by the defense." (Citations omitted; footnote omitted; internal quotation marks omitted.) State v. Ray , supra, 290 Conn. at 612-13, 966 A.2d 148.

We determined from this survey that "Apprendi did not change the constitutional landscape and that the holdings of Mullaney , Patterson , McMillan and Apprendi can be readily reconciled. First, under Mullaney , if a state chooses to treat a fact as an element of an offense, the state must prove that fact beyond a reasonable doubt, even if the state constitutionally could have treated the fact as an affirmative defense.... Second, under Patterson , if a state chooses to recognize a mitigating circumstance as an affirmative defense, it is not required 'to prove its nonexistence in each case in which the fact is put in issue, if in its judgment this would be too cumbersome, too expensive, and too inaccurate.' ... There are, however, 'constitutional limits beyond which the [s]tates may not go in this regard.' ... For example, a state constitutionally could not treat the fact that the defendant did not commit any of the conduct of which he is accused as an affirmative defense.... Third, under McMillan , a fact that exposes the defendant to a mandatory minimum sentence within the range allowed by the jury's verdict need not be found by the jury beyond a reasonable doubt.... Fourth, under Apprendi , if a fact allows the sentencing court to impose a punishment exceeding the range authorized by the jury's verdict, that fact has the character of an element despite its label as a sentence enhancement." (Citations omitted; emphasis in original; footnote omitted.) State v. Ray , supra, 290 Conn. at 622-23, 966 A.2d 148.

In disagreeing with the defendant's reliance in Ray on the structure of §§ 21a-277 (a) and 21a-278 (b) as indicating that lack of drug dependency is an aggravating factor under Apprendi insofar as the statutes "are identical, but the punishment for a violation of § 21a-278 (b) is more severe," we emphasized that, as "construed by this court in State v. Januszewski , supra, 182 Conn. at 162-69, 438 A.2d 679, and State v. Hart , supra, 221 Conn. at 607-11, 605 A.2d 1366, the absence of drug dependency does not increase the penalty for the conduct prohibited by § 21a-277 (a). Rather, drug dependency is an affirmative defense to charges that the defendant engaged in the conduct prohibited by § 21a-278 (b), which happens to be the same as the conduct that is prohibited by § 21a-277 (a). In other words, it is not the absence of drug dependency that increases the range of punishment to which the accused is exposed under § 21a-277 (a), but rather, it is the presence of drug dependency that decreases the range of punishment to which the accused is exposed under § 21a-278 (b)." State v. Ray , supra, 290 Conn. at 624-25, 966 A.2d 148. We acknowledged that "this distinction is formalistic" but emphasized that such "[f]ormal distinctions ... can be constitutionally significant" under the case law of the United States Supreme Court, which defers to the construction of state law by the state's highest court in determining whether it passes constitutional muster. Id., at 625-26, 605 A.2d 1366.

The Supreme Court emphasized, however, that in "holding that facts that increase mandatory minimum sentences must be submitted to the jury, we take care to note what our holding does not entail. Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial [fact-finding], does not violate the [s]ixth [a]mendment." Alleyne v. United States , supra, 570 U.S. at 116, 133 S.Ct. 2151. The court stated that "[e]stablishing what punishment is available by law and setting a specific punishment within the bounds that the law has prescribed are two different things.... Our decision today is wholly consistent with the broad discretion of judges to select a sentence within the range authorized by law." (Citation omitted; internal quotation marks omitted.) Id., at 117, 133 S.Ct. 2151.

Like Ray and Brown , other federal circuit courts of appeals have held that affirmative defenses eliminating or mitigating criminal liability do not violate Apprendi . See, e.g., United States v. Thompson , 554 F.3d 450, 455 (4th Cir.) (noting that interpretation of 18 U.S.C. § 3553 [f] "safety valve" statute for sentencing guidelines requiring defendant to prove entitlement amounted to affirmative defense that did not violate Apprendi ), cert. denied, 558 U.S. 870, 130 S.Ct. 191, 175 L.Ed. 2d 120 (2009) ; United States v. Snype , 441 F.3d 119, 151-52 (2d Cir.) (no Apprendi violation when defendant must prove entitlement to relief from life sentence dictated by three strikes statute by clear and convincing evidence), cert. denied, 549 U.S. 923, 127 S.Ct. 285, 166 L.Ed. 2d 218 (2006) ; United States v. Tarallo , 380 F.3d 1174, 1192 (9th Cir. 2004) (requiring defendant to prove lack of knowledge as to existence of certain federal securities laws "does not run afoul of Apprendi because it establishes a partial affirmative defense, not an element of the crime"), modified on other grounds, 413 F.3d 928 (9th Cir. 2005).

P.A. 17-17 repealed the existing language in §§ 21a-277 (a) and (b), and 21a-278 (a) and (b). With respect to the statutory subsections at issue in the present appeal, P.A. 17-17, § 1, replaced the language previously contained in § 21a-277 (a) ; see footnote 3 of this opinion; with the following: "(1) No person may manufacture, distribute, sell, prescribe, dispense, compound, transport with the intent to sell or dispense, possess with the intent to sell or dispense, offer, give or administer to another person, except as authorized in this chapter, any controlled substance that is a (A) narcotic substance, or (B) hallucinogenic substance.
"(2) Any person who violates subdivision (1) of this subsection (A) for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars, or be both fined and imprisoned, (B) for a second offense, shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned, and (C) for any subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."
P.A. 17-17, § 2, replaced the language previously contained within § 21a-278 (b) ; see footnote 1 of this opinion; with the following: "(1) No person may manufacture, distribute, sell, prescribe, dispense, compound, transport with the intent to sell or dispense, possess with the intent to sell or dispense, offer, give or administer to another person, except as authorized in this chapter or chapter 420f, (A) a narcotic substance, (B) a hallucinogenic substance, (C) an amphetamine-type substance, or (D) one kilogram or more of a cannabis-type substance. The provisions of this subdivision shall not apply to a person who is, at the time of the commission of the offense, a drug-dependent person.
"(2) Any person who violates subdivision (1) of this subsection (A) for a first offense, shall be imprisoned not less than five years or more than twenty years, and (B) for any subsequent offense, shall be imprisoned not less than ten years or more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subdivision shall not be suspended, except that the court may suspend the execution of such mandatory minimum sentence if, at the time of the commission of the offense, such person was under the age of eighteen years or such person's mental capacity was significantly impaired, but not so impaired as to constitute a defense to prosecution." (Emphasis added.)

The testimony of the various stakeholders before the Judiciary Committee in support of the bill subsequently enacted as P.A. 17-17 further indicates that the legislature did not intend its amendments to the narcotics statutes to effect substantive changes. See, e.g., In re Elianah T.-T. , 326 Conn. 614, 625 n.10, 165 A.3d 1236 ("[i]t is now well settled that testimony before legislative committees may be considered in determining the particular problem or issue that the legislature sought to address by the legislation" [internal quotation marks omitted] ). For example, a statement issued by the Division of Criminal Justice in support of the bill described the proposed changes as "strictly technical in nature" and "designed to make the statute clearer with no substantive changes. " (Emphasis added.) Conn. Joint Standing Committee Hearings, Judiciary, Pt. 8, 2017 Sess., p. 4253; see also id., pp. 4251-52, written remarks of Alex Tsarkov, executive director of the Connecticut Sentencing Commission (stating that "[t]his bill recognizes the need to improve the organization and comprehensibility of statutes concerning the illegal sale of controlled substances," and describing bill as "a small and technical fix" that did not classify offenses, change existing penalties, or change statutory placements or designations of offenses); id., p. 4254, written remarks of Judicial Branch (bill was intended to "create a statute that is neutral as to content, but that would read more clearly than existing law"); id., p. 4254A, written remarks of Deborah Del Prete Sullivan, Legal Counsel, Office of the Chief Public Defender ("[t]he proposed language clarifies the narcotic statutes to make them easier to interpret and apply").

The defendant seeks review of this unpreserved constitutional claim under State v. Golding , 213 Conn. 233, 239-40, 567 A.2d 823 (1989). Citing Appellate Court authority, State v. Brescia , 122 Conn. App. 601, 604 n.3, 999 A.2d 848 (2010), and State v. Starks , 121 Conn. App. 581, 592, 997 A.2d 546 (2010), the state argues, however, that Golding review of unpreserved constitutional claims is unavailable in an appeal from the denial of a motion to correct an illegal sentence, because the defendant has available the option of filing another motion to correct. Expressing no position on the correctness of the Appellate Court's decisions in Brescia and Starks with respect to the availability of Golding review in the context of motions to correct, we agree with the defendant that we should exercise our discretion to consider this claim, which presents a pure question of law subject to expeditious resolution, as compared to requiring him to file another motion to correct in the trial court.

In upholding the constitutionality of the mandatory minimum robbery sentence, the court also concluded that there "is a rational relationship between the protection of public safety and the imposition of a nonsuspendable sentence for the violent crime of second degree robbery, an essential element of which is the threatened use of a deadly weapon or dangerous instrument.... A statute establishing a mandatory jail sentence not only punishes perpetrators of violent crimes but it may also have a deterrent effect, which is a valid social purpose properly within the legislature's police power." (Citation omitted.) State v. Darden , supra, 171 Conn. at 680-81, 372 A.2d 99.

Thus, we disagree with the defendant's argument that Darden is not controlling because it "assert[ed] a legislative, not executive, encroachment upon judicial power."

We note that the defendant does not ask this court to overrule our decision in Darden , which remains consistent with contemporary federal and state authority considering separation of powers challenges to mandatory minimum sentencing statutes, including those challenging the charging discretion that they afford to prosecutors. See, e.g., United States v. Nigg , 667 F.3d 929, 934-35 (7th Cir.), cert. denied, 566 U.S. 1030, 132 S.Ct. 2704, 183 L.Ed. 2d 61 (2012) ; United States v. MacEwan , 445 F.3d 237, 250-52 (3d Cir.), cert. denied, 549 U.S. 882, 127 S.Ct. 208, 166 L.Ed. 2d 144 (2006) ; State v. Saari , 152 Vt. 510, 517-19, 568 A.2d 344 (1989) ; see also Mistretta v. United States , 488 U.S. 361, 364, 109 S.Ct. 647, 102 L.Ed. 2d 714 (1989) (Rejecting separation of powers challenge to federal sentencing guidelines, and noting that "[h]istorically, federal sentencing-the function of determining the scope and extent of punishment-never has been thought to be assigned by the [United States] [c]onstitution to the exclusive jurisdiction of any one of the three [b]ranches of [g]overnment. Congress, of course, has the power to fix the sentence for a federal crime ... and the scope of judicial discretion with respect to a sentence is subject to congressional control." [Citation omitted.] ).

Given that the classification of offenses is a uniquely legislative function, we find distinguishable State v. McCahill , supra, 261 Conn. at 492, 811 A.2d 667, upon which the defendant relies. In McCahill, we concluded that No. 00-200, § 5, of the 2000 Public Acts, which eliminated the court's discretion to grant postconviction bail in any case "involving the use, attempted use or threatened use of physical force against another person," violated the separation of powers because "it significantly interferes with the orderly functioning of the Superior Court's judicial role." Id., at 508-509, 811 A.2d 667. In so concluding, we observed that, particularly with respect to relatively minor offenses that implicated only short terms of imprisonment, this statute requiring immediate incarceration had the effect of rendering the right to appellate review "meaningless," depriving judges of the ability to continue cases for sentencing at a later date, or to impose sentences without incarceration. See id., at 513-18, 811 A.2d 667.