******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* EARL V. THOMPSON
(AC 41780)

DiPentima, C. J., and Lavine and Bishop, Js.

*Syllabus*

The defendant, who had been convicted of the crimes of conspiracy to commit robbery in the first degree, robbery in the first degree and kidnapping in the first degree, appealed to this court from the trial court's dismissal of his motion to correct an illegal sentence. In his operative motion, he alleged that his conviction of conspiracy to commit robbery in the first degree should be vacated because the state failed to present sufficient evidence that a plan existed between the defendant and his codefendant to threaten the victim with a gun after they gained entry into the victim's home, or showing that he intentionally aided his codefendant in the commission of the crime of robbery in the first degree. On appeal, the defendant claimed that the court improperly concluded that it lacked jurisdiction to consider the claim raised in his motion. *Held* that the trial court properly dismissed the defendant's motion to correct an illegal sentence; for that court to have jurisdiction over the motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding, and not the proceedings leading to the conviction, had to be the subject of the attack, and the defendant's claim here that the state did not present sufficient evidence to support his conviction of conspiracy to commit robbery in the first degree constituted a collateral attack on the validity of his conviction, via a sufficiency of the evidence claim, and did not challenge the legality of the sentence or the manner in which it was imposed.

Argued April 8—officially released June 18, 2019

*Procedural History*

Substitute information charging the defendant with the crimes of conspiracy to commit robbery in the first degree, robbery in the first degree, burglary in the first degree and kidnapping in the first degree as an accessory, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Dewey, J.*; thereafter, the court granted the defendant's motion for a judgment of acquittal as to the charge of burglary in the first degree; verdict of guilty of conspiracy to commit robbery in the first degree, robbery in the first degree and kidnapping in the first degree; subsequently, the court denied the defendant's motion for a new trial and rendered judgment in accordance with the verdict, from which the defendant appealed to this court, which affirmed the judgment; thereafter, the court, *Dewey, J.*, dismissed the defendant's motion to correct an illegal sentence, and the defendant appealed to this court. *Affirmed.*

*Mark Diamond*, assigned counsel, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom were *Gail P. Hardy*, state's attorney, and, on the brief, *David L. Zagaja*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Earl V. Thompson, appeals from the judgment of the trial court dismissing his motion to correct an illegal sentence. In this appeal, the defendant claims that the trial court improperly concluded that it lacked subject matter jurisdiction to consider his motion. We conclude that, in the motion to correct considered by the trial court, the defendant challenged only the validity of his conviction and not his sentence or the sentencing proceeding, and, therefore, the court properly determined that it lacked subject matter jurisdiction. Accordingly, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to our discussion. The defendant was convicted, after a jury trial, of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-48, robbery in the first degree in violation of § 53a-134 (a) (4) and kidnapping in the first degree as an accessory in violation of General Statutes §§ 53a-92 (a) (2) (B) and 53a-8. See *State* v. *Thompson*, 128 Conn. App. 296, 298, 17 A.3d 488 (2011), cert. denied, 303 Conn. 928, 36 A.3d 241 (2012). Following his conviction, the court sentenced him to a term of twenty years incarceration on each of the robbery counts, to run concurrently, and a term of twenty-five years incarceration on the kidnapping count, to run consecutively to the other terms, for a total effective sentence of forty-five years of incarceration. Id., 300. This court affirmed the defendant's conviction on direct appeal.[1] Id., 298.

On October 29, 2015, the self-represented defendant filed a motion to correct an illegal sentence pursuant to Practice Book § 43-22. He argued that his sentence was internally contradictory and violated his right against double jeopardy. The front page of this motion contains two notations from the court. The first notation, dated March 31, 2016, states that the motion was withdrawn. The second notation, dated August 24, 2016, states that the motion should be placed back on the docket and that a special public defender would review the motion to correct an illegal sentence. The self-represented defendant essentially reasserted the contents of his motion to correct an illegal sentence in a motion dated May 6, 2016,[2] and captioned "Motion to reopen Motion to correct illegal sentence pursuant to Connecticut Practice Book [§] 43-22." This "motion to reopen" included the claims that the defendant's sentence was internally contradictory and violated his right against double jeopardy.

On September 20, 2016, Attorney Robert J. McKay entered an appearance on behalf of the defendant. On April 24, 2017, McKay filed a motion to correct an illegal sentence. In the accompanying memorandum of law, McKay set forth the following: "The defendant now

comes and claims that . . . there is a question regarding which statutory provision . . . applied at that time. Within the current case law, the defendant's conviction for conspiracy to commit robbery in the first degree . . . should be vacated as there existed no facts to support that there existed a plan between the defendant and a codefendant to threaten the victim with a gun upon enter[ing] the victim's home and/or intentionally aided the codefendant in committing the offense of robbery in the first degree."[3] McKay did not present a double jeopardy argument in his motion to correct. On May 25, 2017, the state filed an objection to the motion to correct an illegal sentenced filed by McKay.

On July 28, 2017, the court dismissed the motion to correct an illegal sentence filed by McKay. It set forth the general legal principles regarding a motion to correct filed pursuant to Practice Book § 43-22. It then concluded: "Insofar as the defendant's motion to correct constituted a collateral attack on his conviction it is outside of this court's jurisdiction. See, e.g., *State* v. *Starks*, 121 Conn. App. 581, 590, 997 A.2d 546 (2010); *State* v. *Wright*, 107 Conn. App. 152, 157–58, 944 A.2d 991, cert. denied, 289 Conn. 933, 958 A.2d 1247 (2008)." Furthermore, the last page of the motion to correct an illegal sentence filed by McKay contains the following handwritten notation, signed by Judge Dewey: "[D]ismissed, see memorandum of decision." This appeal followed.

We begin by setting forth the relevant legal principles and our standard of review. "The Superior Court is a constitutional court of general jurisdiction. In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law. . . . It is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. . . . This is so because the court loses jurisdiction over the case when the defendant is committed to the custody of the commissioner of correction and begins serving the sentence. . . . Because it is well established that the jurisdiction of the trial court terminates once a defendant has been sentenced, a trial court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act. . . . [Practice Book] § 43-22 embodies a common-law exception that permits the trial court to correct an illegal sentence or other illegal disposition. . . . Thus, if the defendant cannot demonstrate that his motion to correct falls within the purview of § 43-22, the court lacks jurisdiction to entertain it. . . . [I]n order for the court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding [itself] . . . must be the subject of the attack." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Mukhtaar*, 189 Conn. App. 144, 148–49,     A.3d     (2019); see also *State*

v. *Walker*, 187 Conn. App. 776, 783–84, 204 A.3d 38, cert. denied, 331 Conn. 914, 204 A.3d 703 (2019). The determination of whether a claim may be brought via a motion to correct an illegal sentence presents a question of law over which our review is plenary. *State* v. *Abraham*, 152 Conn. App. 709, 716, 99 A.3d 1258 (2014); *State* v. *Koslik*, 116 Conn. App. 693, 697, 977 A.2d 275, cert. denied, 293 Conn. 930, 980 A.2d 916 (2009).

"[A]n illegal sentence is essentially one which . . . exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. . . . In accordance with this summary, Connecticut courts have considered four categories of claims pursuant to [Practice Book] § 43-22. The first category has addressed whether the sentence was within the permissible range for the crimes charged. . . . The second category has considered violations of the prohibition against double jeopardy. . . . The third category has involved claims pertaining to the computation of the length of the sentence and the question of consecutive or concurrent prison time. . . . The fourth category has involved questions as to which sentencing statute was applicable. . . . Considering these categories . . . this court [has] held . . . that a challenge to the legality of a sentence focuses not on what transpired during the trial or on the underlying conviction. In order for the court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding, and not the trial leading to the conviction, must be the subject of the attack." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Evans*, 329 Conn. 770, 779, 189 A.3d 1184 (2018), cert. denied,      U.S.      , 139 S. Ct. 1304, 203 L. Ed. 2d 425 (2019). Stated differently, "the motion to correct is not another bite at the apple in place of challenges that are more properly brought on direct appeal . . . ." Id., 781.

In the memorandum in support of the motion to correct an illegal sentence filed by McKay, the defendant expressly challenged his conviction for conspiracy to commit robbery in the first degree. Specifically, he argued that his conviction for that offense should be vacated because the state failed to present evidence that (1) a plan existed between the defendant and the codefendant to threaten the victim with a gun after entry into the victim's home and/or (2) the defendant intentionally aided the codefendant in the commission of the crime of robbery in the first degree. Simply stated, the defendant claims that there was insufficient evidence to support his conviction for conspiracy to commit robbery in the first degree.

The motion filed by McKay was the only one considered and decided by the court. Thus, the only claim before the court was whether the state had produced

sufficient evidence to support the defendant's conviction for conspiracy to commit robbery in the first degree. In *State* v. *Starks*, supra, 121 Conn. App. 590, this court held that a claim of insufficient evidence "do[es] not concern the legality of [a defendant's sentence] or the manner in which it was imposed" and therefore lies outside the court's jurisdiction in regard to a motion to correct an illegal sentence. Put differently, the defendant's motion constituted a collateral attack on his conviction and, thus, was not within the court's jurisdiction. See, e.g., *State* v. *Koslik*, supra, 116 Conn. App. 699. Accordingly, we conclude that the court properly dismissed the motion to correct an illegal sentence filed by McKay.[4]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In this court's decision, we set forth the following facts: "At approximately 11:30 p.m. on August 10, 2004, Stephan Julian arrived at her home in Bloomfield. At that time, her son, Damien Gardner, resided with her but was not present that night. As Julian entered the house, she was confronted by a man with a gun. A second man, also armed with a gun, quickly emerged. Because the faces of both men were covered, Julian could not recognize them, but she was able to determine that they were both dark skinned with Jamaican accents. The men repeatedly asked Julian where money was located in the house and forced her to lie on the floor in a downstairs bathroom while they searched the house. The men periodically checked on Julian, and she could hear them going up and down the stairs of her home. At one point, she heard an upstairs toilet flush. Eventually, when Julian no longer heard the men in her home, she peeked out of the bathroom and saw that it was light outside. She exited the bathroom and called the police.

"Detective Eric Kovanda was primarily responsible for processing the crime scene. In addition to other forensic evidence, Kovanda collected two urine samples from the rim of the toilet located in one of the upstairs bathrooms. The DNA profile developed from the urine swabs did not match any in the existing offender databases. In 2006, two jailhouse informants identified the defendant as a suspect, and, consequently, on February 11, 2008, the police collected a DNA sample from the defendant for comparison to the DNA profile developed from the urine samples that had been collected from the crime scene.

"On February 28, 2008, Kovanda met with the defendant to discuss the August 11, 2004 incident. The defendant indicated that he knew Julian's son, Gardner, and that he had been at their house a week or a few days prior to August 11, 2004. The defendant was arrested and charged with conspiracy to commit robbery in the first degree, robbery in the first degree, burglary in the first degree and kidnapping in the first degree as an accessory. . . .

"At the close of evidence, the state conceded that it had not presented sufficient evidence to support the burglary charge, and the court granted the defendant's motion for a judgment of acquittal as to that charge. The jury found the defendant guilty of the remaining counts." *State* v. *Thompson*, supra, 128 Conn. App. 298–300.

[2] The court's date stamp on the defendant's motion to reopen is illegible and we cannot discern when this motion was received by the trial court.

[3] Three days later, during a brief hearing, the following colloquy occurred:

"The Court: Counsel, you have filed a substantial memoranda in support of the motion.

"[Defense Counsel]: Yes, Your Honor.

"The Court: And at this point, there is nothing left other than for me to review the allegations—

"[Defense Counsel]: Right.

"The Court: —individually and file my response to that.

"[Defense Counsel]: Yes, Your Honor.

"[The Prosecutor]: Thank you, Your Honor.

"The Court: That is it. So at this point, I have all the papers. I'll be reviewing them. I'll get to the decision as soon as is possible. Thank you.

"[Defense Counsel: Thank you."

[4] We have reviewed the record, including the court file and the memorandum of decision, and conclude that the motion to correct and the motion to reopen filed by the self-represented defendant were not before the trial court. Thus, it never considered or acted upon the double jeopardy claim raised in those motions. We note that "[a] violation of a defendant's right against double jeopardy is one of the permissible grounds on which to challenge the legality of a sentence [in a motion to correct an illegal sentence]." *State* v. *Santiago*, 145 Conn. App. 374, 379, 74 A.3d 571, cert. denied, 310 Conn. 942, 79 A.3d 893 (2013); see also *State* v. *Wade*, 178 Conn. App. 459, 466, 175 A.3d 1284 (2017) (defendant properly may raise double jeopardy claim in context of motion to correct illegal sentence), cert. denied, 327 Conn. 1002, 176 A.3d 1194 (2018).

---