******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* KEVIN MYERS
## (SC 20563)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to statute (§ 54-91g), when sentencing a child whose case has been
transferred from the docket for juvenile matters to the regular criminal
docket of the Superior Court and the child has been convicted of a class
A or B felony pursuant to such transfer, the sentencing court is required
to consider certain factors, including the defendant's age at the time of
the offense and the hallmark features of adolescence.

Pursuant further to statute (§ 54-125a (f) (1)), a person convicted of a crime
or crimes committed while such person was under eighteen years of
age and serving a sentence for that crime or crimes of fifty years of
imprisonment or less shall be eligible for parole after serving 60 percent
of the sentence or twelve years, whichever is greater.

The defendant, who, in two separate cases, had been convicted of numerous
crimes that he committed when he was fifteen years old, appealed from
the trial court's denial in part and dismissal in part of his motions to
correct an illegal sentence. In 2009, the defendant was sentenced in the
first case to a total effective sentence of eighteen years of imprisonment,
followed by twenty-two years of special parole. In 2011, the defendant
entered a guilty plea in the second case and received a sentence of
fourteen years of imprisonment, followed by six years of special parole,
to run concurrently with the sentence that he already was serving in
connection with the 2009 case. In light of the United States Supreme
Court's decision in *Miller* v. *Alabama* (567 U.S 460) and its progeny, as
well as legislation (P.A. 15-84) enacted in response thereto concerning
sentencing procedures for juvenile offenders, the defendant filed one
motion to correct an illegal sentence in each criminal case. He claimed
that the trial court had failed to consider the hallmark features of adoles-
cence as mitigating factors in sentencing him, in violation of *Miller* and
its progeny, and in violation of § 54-91g, and sought a resentencing at
which such factors would be considered. The defendant also claimed
that he was being denied a meaningful opportunity for parole because,
when the Board of Pardons and Paroles calculated his parole eligibility
date pursuant to § 54-125a (f) (1), it did so on the basis of his fourteen
year sentence, rather than on the basis of either his eighteen year sen-
tence or the total time served under both sentences, which, due to the
structure of his concurrent sentences, resulted in his parole eligibility
date in 2023 rather than in 2019. The defendant contended that the
board's incorrect calculation preventing him from receiving any practical
benefit under § 54-125a (f) (1) was contrary to legislative intent, did not
reflect the terms of his plea agreement, in violation of his right to due
process, and violated his right to equal protection under the law. The
trial court dismissed the defendant's claim that he was entitled to resen-
tencing pursuant to *Miller* and its progeny, his claim that he was entitled
to resentencing under § 54-91g, his claim that he was denied a meaningful
opportunity for parole under § 54-125a (f) (1), and his equal protection
claim. The court denied the defendant's claim that his sentences as
imposed violated the understanding of his plea agreement, in violation
of his right to due process, concluding that there was no agreement
with respect to when the defendant would be eligible for parole. On
the defendant's appeal from the denial of his motions to correct an
illegal sentence, *held* that the form of the trial court's judgment was
improper insofar as that court should have denied, rather than dismissed,
the defendant's claims that he was entitled to be resentenced on the
basis of *Miller* and its progeny, and § 54-91g, and insofar as it should
have dismissed, rather than denied, the defendant's claim that his parole
eligibility date did not reflect the terms of his plea agreement, in violation
of his right to due process: because the defendant's claims that he
was entitled, pursuant to *Miller* and its progeny, and § 54-91g, to be
resentenced at a hearing at which the sentencing court must consider

the mitigating factors of youth plausibly challenged the defendant's sentence, the trial court had subject matter jurisdiction to address them, but the defendant's *Miller* claim failed on the merits because the defendant was not sentenced to life imprisonment or its functional equivalent and because he was eligible for parole, rendering *Miller* inapplicable to him, and his claim under § 54-91g failed in light of this court's prior conclusion that the legislature did not intend for the section of P.A. 15-84 codifying § 54-91g to apply retroactively; moreover, the defendant's claims that his parole eligibility date violated § 54-125a (f) (1) and his rights to due process and equal protection were jurisdictionally defective insofar as they did not challenge the defendant's sentences or the manner in which the sentencing court imposed his sentences but, instead, arose from an action, namely, the calculation of his parole eligibility date, that he concedes was undertaken by the board; furthermore, it was undisputed that the board was the state actor tasked by the relevant state regulation (§ 54-125a-3 (b)) with determining the defendant's earliest parole eligibility date, and, although the record did not reveal how the board interpreted and applied the relevant statutes in doing so, the defendant's claims regarding his parole eligibility date challenged the board's act of interpreting and applying the relevant statutes, and the proper forum for the defendant to raise those claims, following exhaustion of any administrative remedies, is in a habeas proceeding; additionally, the defendant will be eligible for parole regardless of which of his sentences the board bases its calculation on, just not as soon as he would prefer, and the mere fact that the board's interpretation of the applicable statutes yielded a later parole eligibility date than another interpretation could have yielded does not, in and of itself, implicate the legality of the defendant's sentences for purposes of the trial court's jurisdiction over his motions to correct an illegal sentence.

Argued December 16, 2021—officially released May 24, 2022

*Procedural History*

Substitute information, in the first case, charging the defendant with two counts each of the crimes of sexual assault in the first degree and kidnapping in the first degree, and substitute information, in the second case, charging the defendant with the crimes of sexual assault in the first degree and burglary in the second degree, brought to the Superior Court in the judicial district of Hartford, where the first case was tried to the jury before *Mullarkey, J.*; verdict and judgment of guilty of one count of sexual assault in the first degree and two counts of kidnapping in the first degree; thereafter, the second case was tried to the jury before *Schuman, J.*; subsequently, the court declared a mistrial as to the charge of sexual assault in the first degree, and the defendant was presented to the court, *Alexander, J.*, on a plea of guilty to one count of sexual assault in the first degree; judgment of guilty in accordance with the plea; thereafter, the court, *Alexander, J.*, dismissed in part and denied in part the defendant's motions to correct an illegal sentence, and the defendant appealed. *Improper form of judgment; affirmed in part; vacated in part; judgment directed in part.*

*Tamar R. Birckhead*, for the appellant (defendant).

*Jonathan M. Sousa*, deputy assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, *Robin D. Krawczyk*, senior assistant state's attorney, and *Jennifer F. Miller*, former assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, C. J. The principal issue in this appeal is whether a motion to correct an illegal sentence is a jurisdictionally proper vehicle by which to challenge a parole eligibility date, as calculated by the Board of Pardons and Paroles (board), in light of the sentences, as pronounced by the court. The defendant, Kevin Myers, was convicted in two separate criminal cases for several offenses that he committed in 2007, when he was fifteen years old. He now appeals[1] from the trial court's dismissal in part and denial in part of his two motions to correct an illegal sentence, one filed in each of his two cases. On appeal, the defendant claims that the trial court incorrectly concluded that it lacked jurisdiction over the claims in his motions to correct and that (1) he was entitled to resentencing in both cases because the sentencing court failed to consider his youth as a mitigating factor, in violation of *Miller* v. *Alabama*, 567 U.S. 460, 476–77, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), and General Statutes § 54-91g,[2] (2) the structure of his two sentences deprived him of a meaningful opportunity for parole because it resulted in a later parole eligibility date than he otherwise would have been entitled to under General Statutes § 54-125a (f) (1),[3] and (3) his parole eligibility date violated his right to equal protection under the fourteenth amendment to the United States constitution and article first, § 20, of the Connecticut constitution. The defendant further contends that the trial court improperly denied his claim that his parole eligibility date, as calculated by the board, violated the terms of his plea agreement, in violation of his right to due process under the fourteenth amendment to the United States constitution and article first, §§ 8 and 9, of the Connecticut constitution. We affirm in part the judgment of the trial court.[4]

The record reveals the following relevant facts and procedural history. On April 4, 2007, when he was fifteen years old, the defendant sexually assaulted a woman in her East Hartford apartment. Several months later, on July 8, 2007, the defendant, who was still fifteen years old, returned to the same apartment building, abducted two women, and sexually assaulted one of them. See *State* v. *Myers*, 129 Conn. App. 499, 501–503, 21 A.3d 499, cert. denied, 302 Conn. 918, 27 A.3d 370 (2011). On that same night, a police officer arrested the defendant, who matched the description of the suspect, when the officer observed the defendant running across a street in the same neighborhood where the attack had occurred. Id., 503.

The state prosecuted the defendant for the April 4 and July 8, 2007 incidents in two separate cases in the judicial district of Hartford, each with its own docket number. The prosecution for the July 8, 2007 incident (July 8 prosecution) proceeded first. In 2009, under docket number CR-07-0211928-T, following a jury trial,

the defendant was convicted of one count of sexual assault in the first degree in violation of General Statutes (Rev. to 2007) § 53a-70 (a) (1) and two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A). Id., 501. On April 29, 2009, the court sentenced the defendant, with respect to the July 8 prosecution, to a total effective sentence of eighteen years of imprisonment, followed by twenty-two years of special parole.[5]

The prosecution for the April 4, 2007 incident (April 4 prosecution) went to trial in October, 2011, under docket number CR-07-0212494-T. In the April 4 prosecution, the state charged the defendant with sexual assault in the first degree in violation of General Statutes (Rev. to 2007) § 53a-70 (a) (1) and burglary in the second degree, in violation of General Statutes (Rev. to 2007) § 53a-102 (a) (2). The jury found the defendant not guilty of burglary in the second degree but was unable to reach a verdict on the sexual assault count, leading the trial court to declare a mistrial as to that count. Subsequently, on December 8, 2011, the defendant pleaded guilty in the April 4 prosecution under the *Alford*[6] doctrine to onecount of sexual assault in the first degree. Pursuant to the court's offer during plea negotiations, the defendant was sentenced to fourteen years of imprisonment, followed by six years of special parole. The court ordered the sentence in the April 4 prosecution to run concurrently with the eighteen year sentence the defendant already was serving for his conviction from the July 8 prosecution. The court explained to the defendant, however, that, because he already was serving a sentence in connection with the July 8 prosecution, he was not entitled to presentence confinement credit toward his fourteen year sentence in the April 4 prosecution.[7] As a result of the approximately four year gap between his convictions and sentences in the two separate cases, the defendant's eighteen year sentence in the July 8 prosecution, which commenced in July, 2007, will end in July, 2025, whereas his fourteen year sentence in the April 4 prosecution, which commenced in December, 2011, will end several months later, in November, 2025.[8]

Constitutional and statutory changes to juvenile sentencing laws subsequent to the defendant's sentencing in connection with the April 4 prosecution prompted him to file the motions to correct an illegal sentence that are at issue in this appeal. In order to provide background for the defendant's claims, we summarize the relevant constitutional and statutory changes to juvenile sentencing laws that occurred subsequent to the defendant's convictions.

In 2012, in *Miller* v. *Alabama,* supra, 567 U.S. 460, the United States Supreme Court held that the eighth amendment to the United States constitution bars sentencing offenders who were under eighteen years old when they committed their offenses to a sentence of

mandatory life imprisonment without the possibility of parole. See id., 470. The Supreme Court held that, prior to sentencing a juvenile offender to life without the possibility of parole, a court must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Id., 480. Our subsequent decision in *State* v. *Riley*, 315 Conn. 637, 641, 110 A.3d 1205 (2015), cert. denied, 577 U.S. 1202, 136 S. Ct. 1361, 194 L. Ed. 2d 376 (2016), concluded that the eighth amendment requires a sentencing court to consider the *Miller* factors before exercising its discretion to impose a sentence on a juvenile offender that is the "functional equivalent" of life without the possibility of parole.

The United States Supreme Court addressed the retroactive effect of *Miller* in *Montgomery* v. *Louisiana*, 577 U.S. 190, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016), in which the court concluded that, although *Miller* applies retroactively, that "retroactive effect . . . does not require [s]tates to relitigate sentences, let alone convictions, in every case [in which] a juvenile offender received mandatory life without parole. A [s]tate may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." Id., 212.

In 2015, our legislature responded to the United States Supreme Court's decision in *Miller* by enacting §§ 1 and 2 of No. 15-84 of the 2015 Public Acts (P.A. 15-84), which are codified at §§ 54-125a (f) and 54-91g, respectively. Public Act 15-84 exceeds the constitutional floor established by *Miller*, making changes that affect a broader range of juvenile offenders than just those facing life sentences or the functional equivalent thereof. Section 1 of P.A. 15-84, codified at § 54-125a (f), established new, more favorable parole eligibility rules for juvenile offenders who are "incarcerated on or after October 1, 2015, and who received a definite sentence or total effective sentence of more than ten years for such crime or crimes prior to, on or after October 1, 2015 . . . ." See footnote 3 of this opinion. Section 2 of P.A. 15-84, codified at § 54-91g, requires a sentencing court, when a child has been convicted following transfer to the regular criminal docket, to consider the *Miller* factors when sentencing the child for a class A or B felony. See footnote 2 of this opinion.

Relying on these constitutional and statutory changes to juvenile sentencing laws, the defendant claimed in his motions to correct that, in both of his criminal cases, the sentencing court had failed to consider the hallmark features of adolescence as mitigating factors, in violation of *Miller* and its progeny, and § 54-91g. He sought a resentencing at which the court would consider the *Miller* factors.

The defendant also claimed that his parole eligibility date in the July 8 prosecution had been altered by the

imposition of the fourteen year sentence in the April 4 prosecution, thus depriving him of a meaningful opportunity for parole, as intended by the legislature in § 54-125a (f) (1). The defendant relied on § 54-125a (f) (1) (A), which, because he was serving a sentence of more than ten years but less than fifty years, entitled him to "be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater . . . ." He claimed that, rather than calculating his new parole eligibility date pursuant to § 54-125a (f) (1) on the basis of either his eighteen year sentence in the July 8 prosecution, or on the basis of the total time served under both cases, the board had improperly relied solely on his fourteen year sentence in the April 4 prosecution, thus resulting in a later parole eligibility date than he was entitled to pursuant to § 54-125a (f) (1).

Specifically, the defendant contended that the board improperly calculated his parole eligibility date to be December 2, 2023.[9] He claimed that, if the board had calculated his parole eligibility date on the basis of his total time served for the two convictions, he would be eligible for parole more than four years earlier, in July, 2019. The defendant contended that the board's incorrect calculation of his parole eligibility date prevented him from receiving any practical benefit under § 54-125a (f) (1), contrary to the legislative intent underlying the statute, did not reflect the terms of his plea agreement, in violation of his right to due process, and violated his right to equal protection under the law. He claimed that he was entitled to be resentenced in a manner that would allow him to be eligible for an earlier parole date. In the alternative, the defendant requested that the trial court either adjust his sentence in the April 4 prosecution, lengthening the term to eighteen years but changing the commencement of the sentence to coincide roughly with that of the sentence in the July 8 prosecution, or order the board to base its calculation of his parole eligibility date on his eighteen year sentence in the July 8 prosecution.

The trial court dismissed the defendant's claim that he was entitled to resentencing pursuant to both *Miller* and its progeny, and § 54-91g. As to the defendant's *Miller* claim, the trial court concluded that *Miller* and its progeny were inapplicable because the defendant had not been sentenced to life without parole or its functional equivalent. With respect to the defendant's statutory claim, the court relied on this court's decision in *State* v. *Delgado*, 323 Conn. 801, 814, 151 A.3d 345 (2016), which held that the legislature did not intend § 54-91g to apply retroactively. The court also dismissed the defendant's claim that he was denied a meaningful opportunity for parole, noting that he was "eligible for parole, just not when he would prefer . . . to be." The court then denied the defendant's claim that his sentences as imposed violated the understanding of the plea agreement, finding that there "was no agreement or understanding with respect

to when the defendant would be eligible for parole." The court dismissed his equal protection claim on the basis that it was not within the scope of a motion to correct an illegal sentence. Finally, the court dismissed the defendant's claim that the sentence frustrated the purpose of the plea bargain. The court explained that the doctrine of frustration of purpose is a civil one and declined to extend it to this context.[10] This appeal followed.

Before we address the defendant's specific claims in this appeal, we consider the legal principles governing a trial court's jurisdiction over a motion to correct an illegal sentence. "A trial court generally has no authority to modify a sentence but retains limited subject matter jurisdiction to correct an illegal sentence or a sentence imposed in an illegal manner. . . . Practice Book § 43-22[11] codifies this common-law rule. . . . Therefore, we must decide whether the defendant has raised a colorable claim within the scope of Practice Book § 43-22 . . . . In the absence of a colorable claim requiring correction, the trial court has no jurisdiction . . . ." (Citations omitted; footnote in original; internal quotation marks omitted.) *State* v. *McCleese*, 333 Conn. 378, 386, 215 A.3d 1154 (2019). We have emphasized, however, that "[t]he jurisdictional and merits inquiries are separate; whether the defendant ultimately succeeds on the merits of his claim does not affect the trial court's jurisdiction to hear it." *State* v. *Evans*, 329 Conn. 770, 784, 189 A.3d 1184 (2018), cert. denied,      U.S     , 139 S. Ct. 1304, 203 L. Ed. 2d 425 (2019); see *State* v. *Ward*, 341 Conn. 142, 152–58, 266 A.3d 807 (2021) (surveying case law discussing concept of colorable claim in context of motion to correct illegal sentence). In examining whether a claim is colorable, therefore, "the jurisdictional inquiry is guided by the plausibility that the defendant's claim is a challenge to his sentence, rather than its ultimate legal correctness." (Internal quotation marks omitted.) *State* v. *Evans*, supra, 784.

"[A]n illegal sentence is essentially one [that] . . . exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. . . . In accordance with this summary, Connecticut courts have considered four categories of claims pursuant to [Practice Book] § 43-22. The first category has addressed whether the sentence was within the permissible range for the crimes charged. . . . The second category has considered violations of the prohibition against double jeopardy. . . . The third category has involved claims pertaining to the computation of the length of the sentence and the question of consecutive or concurrent prison time. . . . The fourth category has involved questions as to which sentencing statute was applicable." (Internal quotation marks omitted.) Id., 779. We have emphasized that, in order to invoke the jurisdiction of the trial court, a challenge to the legality of a sentence must challenge the sentencing proceeding itself. Id.

We first address the defendant's claim that the trial court improperly dismissed his claims, pursuant to *Miller* and its progeny, and § 54-91g, that he was entitled to resentencing because, in both cases, the sentencing court failed to consider the mitigating factors of youth. Because both of these claims plausibly challenge the defendant's sentence, we conclude that the trial court had subject matter jurisdiction to address them. See id., 784. As we will explain, however, the defendant's claims have no merit. Accordingly, we conclude that the trial court should have denied rather than dismissed these claims.

Relying on *Miller*, the defendant contends that, because he was denied a meaningful opportunity for parole pursuant to § 54-125a (f) (1), he was not provided a remedy for the alleged *Miller* violations that occurred during his sentencing proceedings in both cases. Therefore, he argues that he is entitled to be resentenced, at which sentencing proceeding the court must consider the mitigating factors of youth. We disagree. As the state aptly responds, *Miller* simply does not apply to the defendant because he was not sentenced to life imprisonment or its functional equivalent and because he was eligible for parole. See *Miller* v. *Alabama*, supra, 567 U.S. 480; see also *State* v. *Delgado*, supra, 323 Conn. 811 ("*Miller* simply does not apply when a juvenile's sentence provides an opportunity for parole; that is, a sentencing court has no constitutionally founded obligation to consider any specific youth related factors under such circumstances").

Relying on § 54-91g, the defendant claims that the trial court incorrectly concluded that the statute does not apply retroactively under the facts of the present case. He argues that this court's conclusion in *Delgado*—that § 54-91g does not apply retroactively—applies only to subdivisions (1) and (2) of § 54-91g (a), and that no court has yet concluded that subsection (c) of § 54-91g, on which the defendant relies on appeal, applies only prospectively. Section 54-91g (c) provides: "Whenever a child is sentenced pursuant to subsection (a) of this section, the court shall indicate the maximum period of incarceration that may apply to the child and whether the child may be eligible to apply for release on parole pursuant to subdivision (1) of subsection (f) of section 54-125a." The defendant claims that, because § 54-91g (c) references "parole," and because he was denied parole eligibility pursuant to § 54-125a (f) (1), he has a right, pursuant to § 54-91g (c), to be resentenced on the basis that the sentencing courts in both cases failed to comply with § 54-91g (a) (1) and (2). The state responds that *neither* § 54-91g, in its entirety, nor § 54-125a (f) (1) applies retroactively.

As the defendant concedes in his brief, we resolved this question in *State* v. *Delgado*, supra, 323 Conn. 814–15, in which we concluded that the legislature did not

intend P.A. 15-84, § 2, as codified at § 54-91g, to apply retroactively. Our analysis in that case applied to P.A. 15-84, § 2, in its entirety, which necessarily included the language later codified at § 54-91g (c). See id., 814 (observing that, contrary to other sections of P.A. 15-84, "P.A. 15-84, § 2, provides it is '[e]ffective October 1, 2015,' indicating that the legislature did not intend for this section to apply retroactively").

The defendant's remaining claims in this appeal, all of which at their core challenge the board's determination of his parole eligibility date, share a jurisdictional defect. Rather than challenging the sentences or the manner in which the sentencing court imposed his sentences, the defendant's claims arise from an action that he concedes was undertaken by the board. That is, the defendant contends that his parole eligibility date, as determined by the board, deprived him of a meaningful opportunity for parole, in violation of § 54-125a (f) (1). Therefore, he claims that the trial court incorrectly concluded that his parole eligibility date violated the terms of his plea agreement, in violation of his right to due process under the fourteenth amendment to the United States constitution and article first, §§ 8 and 9, of the Connecticut constitution,[12] and violated his right to equal protection under the fourteenth amendment to the United States constitution and article first, § 20, of the Connecticut constitution.[13]

The key fact that deprived the trial court of jurisdiction over all of the defendant's claims asserting that he was entitled to an earlier parole eligibility date is that the board, not a sentencing court, calculates a defendant's parole eligibility date. In calculating the defendant's parole eligibility date, the board acted in accordance with § 54-125a-3 (b) of the Regulations of Connecticut State Agencies, which provides in relevant part: "The Board . . . shall make a determination of an inmate's earliest parole eligibility date. The Board, in making such determination, shall obtain, on a weekly basis, a list of all inmates sentenced within the previous week. A criminal history of the inmate, will be obtained which may include, but shall not be limited to, a State Police criminal records check, out of state criminal records check, police reports, previous parole and probation reports, and any other information that the Board deems relevant. Criminal justice data systems will be queried for information regarding the length of sentence for each specific charge. The Chairman of the Board . . . shall convene a panel of two or more parole board members to review the information compiled. The panel will determine whether the inmate must serve 50 [percent] or 85 [percent] of his or her sentence before becoming eligible for Parole. The inmate and the Department of Correction will then be notified of the Board's determination."

The mere fact that the defendant has cast his claims as challenging his sentence structure does not alter

our conclusion that, in these motions to correct, the defendant is in actuality challenging an action of the board. Accordingly, because the claims do not plausibly challenge his sentence, the trial court lacked jurisdiction over them. See *State* v. *Evans*, supra, 329 Conn. 784. Specifically, the defendant's claims challenging his parole eligibility date call into question *the board's* interpretation and application of the relevant statutes. Because the defendant's sentences were imposed in two separate cases and ordered to run concurrently, the defendant's parole eligibility date is governed by General Statutes §§ 53a-38 (b) (1) and 54-125a (f) (1) (A), which, together, provide the values for the parole eligibility calculation.[14]

The record in the present case does not reveal how the board interpreted and applied §§ 53a-38 (b) (1) and 54-125a (f) (1) (A) to calculate the defendant's parole eligibility date.[15] Nor does the record reveal when or whether the board informed the defendant of his parole eligibility date. See footnote 9 of this opinion. It is undisputed, however, that the board is the state actor that would interpret those statutes and apply them to the defendant. See Regs., Conn. State Agencies § 54-125a-3 (b). Notwithstanding the defendant's attempts to cast his claims as challenging the legality of his sentences or his sentence structure, his dispute is with the board's interpretation of the applicable statutes—whatever that interpretation may be. The defendant consistently has advocated for either of two particular interpretations of the applicable statutes. He has argued that they should be read to require *the board* to calculate his parole eligibility date either on the basis of his total time served under both sentences, or on the basis of his eighteen year sentence, which he claims is the sentence that "has the longest term to run" for purposes of § 53a-38 (b) (1). The proper forum for the defendant to raise these claims, following exhaustion of any administrative remedies, is in a habeas proceeding.

At oral argument before this court, the defendant's counsel relied on our recent decision in *State* v. *Coltherst*, 341 Conn. 97, 266 A.3d 838 (2021), in support of the defendant's argument that jurisdiction lies over his claims challenging his parole eligibility date. Given the stark contrast between the facts of *Coltherst* and those of the present case, a comparison of the two cases provides further illustration of the nature of the jurisdictional defect suffered by all of the defendant's challenges to his parole eligibility date. Specifically, the defendant argues that we should conclude that, when a juvenile is sentenced in multiple criminal cases to sentences that are ordered to run concurrently, § 54-125a (f) (1) requires the board to use the "total effective sentence"—the total time served under the multiple dockets—as the basis for calculating the juvenile's parole eligibility.

Our decision in *Coltherst* provides an example of when such a claim implicates the legality of the sentences, rather than solely challenging an action of the board. In *Coltherst*, the defendant, who was convicted in two separate criminal cases for crimes he committed when he was under eighteen years of age, filed a motion to correct an illegal sentence in the trial court. See *State* v. *Coltherst*, supra, 341 Conn. 100, 105, 108–109. The defendant in *Coltherst* was resentenced in one case to a total effective sentence of eighty years of imprisonment. Id., 106. The trial court ordered that sentence to run consecutively to the sentence in the other case, a total effective sentence of eighty-five years of imprisonment. Id., 106–107. Following oral argument before this court, we ordered the parties to submit supplemental briefs addressing, inter alia, whether "the defendant [is] eligible for parole when he received two distinct total effective sentences of [eighty-five] years and [eighty] years, respectively, to run consecutively, and, if so, when . . . he [is] eligible for parole [in connection with] each case . . . ." (Internal quotation marks omitted.) Id., 101.

The difference between the present case and *Coltherst* is significant for purposes of jurisdiction over a motion to correct an illegal sentence. In *Coltherst*, we determined that the record was unclear regarding whether the board would ultimately calculate the defendant's parole eligibility on the basis of each of the definite sentences independently. See id., 110–12. If the board did so, we explained, "the defendant's only opportunity for parole would be 30 years after he began serving the 80 year sentence in [one case], 115 years after he began serving the [85 year] sentence [in the other case]. He would die long before becoming eligible for parole, rendering the intended remedy of parole eligibility meaningless—*his sentence would effectively be one without the opportunity for parole*. That interpretation would flout every recent juvenile sentencing decision of both this court and the United States Supreme Court and, therefore, would also be inconsistent with the intent of the legislature in § 54-125a (f) (1)." (Emphasis added.) Id., 111. Accordingly, if the applicable statutes, §§ 53a-38 (b) (2) and 54-125a (f) (1), required the board to calculate the defendant's parole eligibility date on the basis of each definite sentence independently, he would have been denied the opportunity for parole. That conclusion would call into question the legality of the defendant's consecutive sentences as pronounced by the trial court. Consistent with *State* v. *Evans*, supra, 329 Conn. 784, therefore, because the issue plausibly could be understood to challenge the sentence itself, the court had subject matter jurisdiction over that question in the motion to correct an illegal sentence.

By contrast, in the present case, as the trial court observed, the defendant will be eligible for parole under either interpretation of the sentences that he received,

just not as soon as he would prefer. The defendant has never claimed that his sentences in the two cases constitutes the functional equivalent of a sentence of life without the possibility of parole. If the board, as the defendant suggested before the trial court, has interpreted §§ 53a-38 (b) (1) and 54-125a (f) (1) (A) to yield a parole eligibility date of December 2, 2023, the defendant will have served approximately sixteen years of imprisonment when he becomes eligible for parole. The mere fact that the board's interpretation of the applicable statutes has yielded a later parole eligibility date than another interpretation could have yielded does not, by itself, implicate the legality of the defendant's sentences for purposes of the court's jurisdiction over the motions to correct an illegal sentence.

The form of the judgment is improper insofar as the trial court denied the defendant's claim that his new parole eligibility date violated the terms of his plea agreement, in violation of his right to due process, and insofar as that court dismissed the defendant's claim that he was entitled to resentencing on the basis of *Miller*, its progeny, and § 54-91g, that portion of the judgment relating to the trial court's disposition of those claims is vacated, and the case is remanded with direction to render judgment dismissing the defendant's due process claim regarding his new parole eligibility date and denying the defendant's claim that he was entitled to resentencing; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 54-91g provides in relevant part: "(a) If the case of a child, as defined in section 46b-120, is transferred to the regular criminal docket of the Superior Court pursuant to section 46b-127 and the child is convicted of a class A or B felony pursuant to such transfer, at the time of sentencing, the court shall:

"(1) Consider, in addition to any other information relevant to sentencing, the defendant's age at the time of the offense, the hallmark features of adolescence, and any scientific and psychological evidence showing the differences between a child's brain development and an adult's brain development; and

"(2) Consider, if the court proposes to sentence the child to a lengthy sentence under which it is likely that the child will die while incarcerated, how the scientific and psychological evidence described in subdivision (1) of this subsection counsels against such a sentence.

* * *

"(c) Whenever a child is sentenced pursuant to subsection (a) of this section, the court shall indicate the maximum period of incarceration that may apply to the child and whether the child may be eligible to apply for release on parole pursuant to subdivision (1) of subsection (f) of section 54-125a. . . ."

[3] General Statutes § 54-125a (f) (1) provides: "Notwithstanding the provisions of subsections (a) to (e), inclusive, of this section, a person convicted of one or more crimes committed while such person was under eighteen years of age, who is incarcerated on or after October 1, 2015, and who received a definite sentence or total effective sentence of more than ten years for such crime or crimes prior to, on or after October 1, 2015, may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which such person is confined, provided (A) if such person is serving a sentence of fifty years

or less, such person shall be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater, or (B) if such person is serving a sentence of more than fifty years, such person shall be eligible for parole after serving thirty years. Nothing in this subsection shall limit a person's eligibility for parole release under the provisions of subsections (a) to (e), inclusive, of this section if such person would be eligible for parole release at an earlier date under any of such provisions."

[4] Specifically, we conclude that the trial court should have denied, rather than dismissed, the defendant's claims that he is entitled to resentencing pursuant to *Miller* and its progeny, and pursuant to § 54-91g, and that the court should have dismissed, rather than denied, the defendant's claim that his parole eligibility date as calculated by the board violated the terms of his plea agreement. Therefore, the form of the trial court's judgment is improper with respect to those claims. Accordingly, as we will indicate in the rescript of this opinion, we vacate the judgment of the trial court with respect to those claims and remand the case to the trial court with direction to deny the defendant's claims relying on *Miller* and its progeny, and § 54-91g, and to dismiss the defendant's claim that his parole eligibility date violated his plea agreement. We affirm the judgment of the trial court in all other respects.

[5] The judgment of conviction in the July 8 prosecution reflects the jury's verdict finding the defendant not guilty on the first charged count in the information, namely, sexual assault in the first degree. With respect to the charges on which he was convicted in the July 8 prosecution, the sentencing court sentenced the defendant as follows: on count two, sexual assault in the first degree, eight years of incarceration, followed by twelve years of special parole; on count three, kidnapping in the first degree, ten years of incarceration, followed by fifteen years of special parole, both to run consecutively to count two; and, on count four, kidnapping in the first degree, ten years of incarceration, followed by fifteen years of special parole, both to run concurrent to counts two and three.

In 2015, the defendant filed a motion to correct an illegal sentence with respect to the July 8 prosecution, claiming that the periods of fifteen years of special parole for each of the kidnapping counts exceeded the statutory maximum. The trial court granted the motion and reduced his period of special parole to ten years for each of the kidnapping counts. Because the special parole periods for the kidnapping counts ran concurrently with each other, but consecutive to the special parole period for the sexual assault count, the defendant was ultimately sentenced to a total of twenty-two years of special parole.

[6] *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[7] The trial court did, however, grant the defendant presentence confinement credit for the fourteen year sentence in the April 4 prosecution for the time period between the entry of his plea on December 8, 2011, and his sentencing on January 6, 2012.

[8] The record does not reveal the number of days of presentence confinement credited toward the defendant's sentence in the July 8 prosecution. During the January 17, 2019 hearing on the motions to correct that are at issue in this appeal, the defendant represented to the trial court that his sentence in the July 8 prosecution commenced on July 23, 2007.

[9] The state did not challenge the defendant's representation regarding the board's alleged calculation of his parole eligibility date. It is also undisputed that, as of the date of oral argument before this court, the defendant had not yet received a parole hearing.

The particular parole eligibility date provided to the defendant by the board has no bearing on the resolution of the jurisdictional questions presented in this appeal. As we explain in this opinion, the dispositive factor, for purposes of the trial court's jurisdiction over the defendant's motions to correct, is that the board, rather than the sentencing court, calculates the parole eligibility dates of inmates.

[10] On appeal, although the defendant argues that the doctrine of frustration of purpose lends support to his arguments in support of his claim that his parole eligibility date violated the terms of his plea agreement, he does not challenge the court's dismissal of his claim that his sentence frustrated the purpose of the plea bargain on the basis that Connecticut courts have not extended that doctrine to the criminal context. Accordingly, we need not consider that issue further.

[11] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a

sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[12] In support of his claim that his parole eligibility date violated his plea agreement, the defendant argues that the order of the sentencing court in the April 4 prosecution that the two sentences were to run concurrently reflects an intent by the parties that the sentence in the July 8 prosecution would be the controlling sentence for parole eligibility purposes. He further claims that the trial court violated his right to due process by concluding that it lacked jurisdiction to determine whether his sentence in the April 4 prosecution, by negatively impacting his parole eligibility, prevented the state from keeping its plea promises. He also argues that any ambiguity to this effect in the plea agreement should be construed to his benefit. In response, the state observes that the sentencing court in the April 4 prosecution made it clear that, although the two sentences would run concurrently, the defendant would receive no presentence confinement credit toward the fourteen year sentence in the April 4 prosecution for the approximately four years he already had served in connection with his sentence in the July 8 prosecution. The state argues that, because the sentence for the April 4 prosecution did not begin until four years after the sentence in the July 8 prosecution commenced, the sentence in the April 4 prosecution was the governing sentence for purposes of parole eligibility. The state further points out that the defendant was not sentenced pursuant to a plea agreement with the state but, rather, pursuant to a court offer over the state's objection. The state, therefore, was not a party to any plea agreement.

[13] In support of his claim that his parole eligibility date violates his right to equal protection, the defendant contends that, unlike other juvenile offenders who are similarly situated, he was not afforded parole eligibility consistent with state law or an opportunity for parole consistent with the parties' plea agreement. As examples of juvenile offenders similarly situated to him, the defendant points to juvenile offenders sentenced to concurrent sentences in a single case, as opposed to multiple cases. Those juvenile offenders, he argues, would be entitled to parole eligibility upon serving 60 percent of their total effective sentence or after twelve years, whichever is greater. The state responds that the trial court properly rejected the defendant's equal protection claim because it targets an action of the board in calculating the defendant's parole eligibility date, not an action of the sentencing court.

[14] As was discussed at oral argument before this court, we note that, under the facts of the present case, § 53a-38 (b) establishes the length of the defendant's sentence for purposes of calculating his parole eligibility date, providing in relevant part: "A definite sentence of imprisonment commences when the prisoner is received in the custody to which he was sentenced. Where a person is under more than one definite sentence, the sentences shall be calculated as follows: (1) If the sentences run concurrently, the terms merge in and are satisfied by discharge of the term which has the longest term to run . . . ." The resulting sentence is then multiplied by 60 percent pursuant to § 54-125a (f) (1) (A). See footnote 3 of this opinion. If the resulting value is greater than twelve years, that value is used to calculate the parole eligibility date. Otherwise, the defendant will be eligible for parole twelve years after his sentence commenced. If, however, the defendant would be eligible for parole at an earlier date under subsections (a) through (e) of § 54-125a, he is entitled to that earlier parole eligibility date. See General Statutes § 54-125a (f) (1); see also footnote 3 of this opinion.

[15] We take no position on whether the board properly interpreted and applied the relevant statutory provisions to the defendant. See footnote 14 of this opinion. The trial court's lack of subject matter jurisdiction over the defendant's motions to correct similarly deprives us of subject matter jurisdiction over these claims on appeal. See, e.g., *Lewis* v. *Rosen*, 149 Conn. 734, 735, 181 A.2d 592 (1962).